UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RENO-SPARKS INDIAN COLONY, *et al.*, | Case No. 3:23-cv-00070-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| DEB HAALAND, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiffs Reno-Sparks Indian Colony ("RSIC"), Burns Paiute Tribe ("BPT"), and Summit Lake Paiute Tribe ("SLPT") sued Defendants Deb Haaland, the current Secretary of the Interior, along with Anne-Marie Sharkey and Kathleen Rehberg, local officials of the Department of the Interior's Bureau of Land Management ("BLM") in their official capacities (collectively, the "Federal Defendants"), alleging violations of several federal laws through the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"), and seeking to block further construction of a lithium mine near Thacker Pass, Nevada (the "Project"). (ECF No. 1.) The Court granted the proponent of the Project, Lithium Nevada Corporation, leave to intervene as a defendant. (ECF No. 18.) Before the Court is Plaintiffs' motion for a temporary restraining order and preliminary injunction.[1] (ECF No. 19 (the "Motion").) Because Plaintiffs have not shown they are likely to prevail on the merits of their claims, nor shown that they will be irreparably harmed if an injunction does not issue, particularly given their delay in filing the Motion and when contextualized with pre-existing ground

---

[1] The Court denied Plaintiffs' request for emergency relief and ordered that the normal briefing schedule would apply to the Motion. (ECF No. 20.) Federal Defendants (ECF No. 26) and Lithium Nevada (ECF No. 27) responded to the Motion, and Plaintiffs filed a reply (ECF No. 31). The Court has decided not to hold a hearing on the Motion. *See* LR 78-1.

disturbance activities in and around the Project area—and as further explained below—the Court will deny the Motion.

## II.  BACKGROUND

Not long ago, the Court issued an order resolving a consolidated case that challenged BLM's decision to issue a January 15, 2021, Record of Decision ("ROD") approving the Project. *See Bartell Ranch LLC v. Ester M. McCullough*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279 (D. Nev. Feb. 6, 2023). In pertinent part, the Court found that RSIC did not prevail on its claim under the National Historic Preservation Act, 54 U.S.C. § 300101, *et seq.* ("NHPA"), and that BPT did not prevail on either its NHPA claim or its claim under the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* ("NEPA"). (*Id.* at 36-47.) The Court incorporates by reference that discussion. (*Id.*) BPT, but not RSIC, appealed the Court's decision. (*Id.*, ECF No. 285.) And even more recently, the Court denied BPT's motion for an injunction pending appeal. (*Id.*, ECF No. 298.) The United States Court of Appeals for the Ninth Circuit also denied BPT's motion for an injunction pending appeal, but set an expedited appeal schedule. (*Id.*, ECF No. 304.) BPT's appeal remains pending as of the date of entry of this order.

Plaintiffs bring several claims in this case. Plaintiffs first allege a breach of the Federal Land Policy and Management Act, 43 U.S.C. § 1701, *et seq.* ("FLPMA") because BLM has authorized various work plans under prior authorizations Lithium Nevada obtained that Plaintiffs contend should have terminated when BLM issued the ROD. (ECF No. 1 at 35-36.) SLPT next claims that BLM's failure to consult it before issuing the ROD violated the NHPA, along with BLM's purported failure to make a good faith effort to identify Indian tribes to consult with or identify historic properties in the Thacker Pass area. (*Id.* at 36.) All Plaintiffs allege that BLM's failure "to make reasonable efforts to avoid, minimize, or mitigate adverse effects to the historic properties subject to" a post-review discovery process also violates the NHPA. (*Id.* at 36.) SLPT next brings a breach of contract claim, alleging that Federal Defendants breached the "Memorandum of Agreement Between the United States Department of the Interior Bureau of Land Management Winnemucca

District Office and the Nevada State Historic Preservation Officer Regarding the Lithium Nevada Thacker Pass Project Humboldt County" ("MOA") when BLM did not initiate a dispute resolution process described therein upon SLPT's request on October 31, 2022. (*Id.* at 32-34, 36.) Plaintiffs finally bring a NEPA claim based on the allegation that BLM did not issue a supplemental environmental impact statement after RSIC and BPT brought to BLM's attention a massacre that occurred near the Project area in 1865 during the *Bartell Ranch* litigation. (*Id.* at 34-35, 37.)

Plaintiffs primarily seek equitable relief, though they also seek recovery of their attorneys' fees and costs. (*Id.* at 37-38.) They more specifically seek a judgment declaring that BLM's "activities connected to plans for physical disturbance of Thacker Pass" violate FLPMA, NHPA, NEPA, and the APA. (*Id.* at 37.) They also seek a judgment and order "enjoining BLM from authorizing any physical disturbance in Thacker Pass pending compliance with FLPMA, NHPA, and NEPA." (*Id.*) Plaintiffs, presumably SLPT, finally seek a "judgment and order ordering BLM to specifically perform the terms and conditions of the MOA." (*Id.* at 38.) Plaintiffs filed their Motion about two weeks after they filed their Complaint. (ECF Nos. 1, 19.)

The Court described and analyzed the pertinent consultation history between BLM and RSIC, and BLM and BPT, in the merits order resolving the *Bartell Ranch* case. *See Bartell Ranch*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279 at 37-44. However, as SLPT was not a party to that case, the Court of course did not discuss the pertinent consultation history between BLM and SLPT. That consultation history is relevant to SLPT's argument that it will prevail on its claim that BLM failed to consult with SLPT before issuing the ROD. (ECF No. 1 at 4, 36.) The Court accordingly describes that history here based on both the allegations in the Complaint and the evidence that Federal Defendants provided with their response to the Motion.

BLM reached out to SLPT in 2005 as part of the process that led to the Ethnographic Assessment also described in *Bartell Ranch*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279 at 37-44. According to that Ethnographic Assessment, its author

3

mailed five letters to Robyn Burdette, identified as SLPT's tribal Chairperson, over the course of the preparation of the Ethnographic Assessment, but received no response. (ECF No. 26-1 at 59.) The same page of the Ethnographic Assessment also contains this note:

> During a telephone conversation on May 23, 2005, Chairperson Burdette indicated that she would send a representative to the May 26 meeting in Reno; however, no one from the tribe attended the meeting. As of the date of this report, no one else from the tribe has responded with comments to the letters or follow-up telephone calls.

(*Id.*) In 2014, BLM again attempted consultation with SLPT on Lithium Nevada's corporate predecessor's Kings Valley Lithium Clay project. (ECF No. 26-2 at 16.) According to the Final Environmental Assessment document from that project, "[c]onsultation meetings on the Proposed Action were held with . . . the Summit Lake Paiute Tribe on April 20 and May 18, 2013." (*Id.*) "The Summit Lake Paiute Tribe felt the project was outside their immediate area of interest and wanted to use their time and resources to comment on projects closer to their reservation." (*Id.*)

BLM nonetheless identified SLPT as a tribe it should consult with on the Project and sent them a letter attempting to initiate formal consultation on December 12, 2019. (ECF No. 26-3.) As the Court found in *Bartell Ranch*, there is no dispute that SLPT never responded to the letter or otherwise participated in the public comment process regarding the Project that predated the ROD, including by responding to notices BLM published in the Federal Register. *See Bartell Ranch*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279 at 40-41. SLPT does not mention the December 12, 2019, letter in its Complaint (ECF No. 1 at 16), and indeed alleges to the contrary that BLM failed to consult with it before issuing the ROD (*id.* at 4, 36).

BLM also sent SLPT a copy of the Draft Environmental Impact Statement ("DEIS") for the Project on July 29, 2020. (ECF No. 26-6.) In addition, BLM published a notice of the availability of the DEIS in the Federal Register in which BLM noted, "tribes and other stakeholders that may be interested in or affected by the proposed Project that the BLM

4

and FWS are evaluating, are invited to participate in the comment process." Notice of Availability of the Draft Environmental Impact Statement, 85 FR 45651-01, 2020 WL 4340040 (Jul. 29, 2020). BLM additionally sent SLPT a copy of the Final Environmental Impact Statement ("FEIS") on November 30, 2020. (ECF No. 26-9.)

Meanwhile, BLM had determined that the Project would adversely affect cultural resources under the NHPA. To this end, BLM sent SLPT a letter on August 28, 2020, notifying SLPT of this finding, attaching a copy of the proposed Historic Properties Treatment Plan ("HPTP"), and inviting comments and consultation from SLPT on the Project. (ECF No. 26-12.) SLPT did not respond to this letter, nor any of the letters described in the preceding two paragraphs. (ECF No. 1 (declining to mention any of them); ECF No. 26-11 at 62 ("[N]one of the consulted Native American groups have raised any questions or comments or presented issues with the Project.").)

As noted, BLM issued the ROD approving the Project on January 15, 2021. (ECF No. 26-10; *see also* ECF No. 1 at 16.) On April 21, 2021, BLM sent SLPT another letter notifying them of the approved HPTP and asking them if any of the identified sites slated for treatment had religious or cultural importance to SLPT. (ECF No. 3 at 6-7.) Unlike the prior letters described *supra*, SLPT alleges it received this letter. (ECF No. 1 at 16.) Further, SLPT responded to it with a letter stating that it had an interest in all of the sites slated for treatment under the HPTP, and stating its opposition to any activities that would disturb cultural resources in the area. (ECF No. 3 at 9.) SLPT's letter also stated the view that this Project had a poor track record of public notification, objected that 30 days was not long enough to review a complex document like the HPTP, and requested formal consultation on the HPTP, including meetings. (*Id.* at 9-10.)

SLPT followed up with another letter on June 3, 2021, asking BLM to halt all plans for mechanical trenching on the Project, along with any construction at all. (ECF No. 3 at 47-49.) This letter mentioned SLPT's awareness of a motion for preliminary injunction regarding the HPTP in the *Western Watersheds* case, Case No. 3:21-cv-00103, which was later consolidated into *Bartell Ranch*. *See Bartell Ranch*, Case No. 3:21-cv-00080-

MMD-CLB, ECF No. 44. (*See also* ECF No. 3 at 48.) But despite its admitted awareness of them, SLPT never sought leave to intervene in either of those cases. SLPT instead filed this case over a year later, after the conclusion of those cases, on February 16, 2023. (ECF No. 1.)

**III.   DISCUSSION**

The Court addresses the parties' arguments as to Plaintiffs' likelihood of success on the merits and then irreparable harm after first describing the applicable legal standard. Because the Court does not find that either the likelihood of success on the merits or irreparable harm prongs of the requisite analysis favor granting the Motion, the Court does not explicitly address the remining prongs of the analysis.

**A.   Legal Standard**

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders ("TRO"). The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction or TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of hardships favors the plaintiff; and (4) that the injunction is in the public interest. *See Winter*, 555 U.S. at 20. A plaintiff may also satisfy the first and third prongs under a "sliding scale" approach by showing serious questions going to the merits of the case and that a balancing of hardships tips sharply in plaintiff's favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (holding that the Ninth Circuit's "sliding scale" approach remains valid following the *Winter* decision). The plaintiff, however, must still show a likelihood of irreparable harm and that an injunction is in the public interest. *See id.* at 1135.

### B. Likelihood of Success on the Merits

Plaintiffs argue they are likely to prevail on the merits of four of their claims:[2] (1) SLPT's claim that BLM breached the MOA; (2) SLPT's claim that BLM violated NHPA in issuing the ROD without first consulting them; (3) Plaintiffs' claim that BLM violated FLPMA by authorizing new work plans under Lithium Nevada's prior authorizations purportedly superseded by the ROD; and (4) Plaintiffs' claim that BLM's handling of the post-review discovery process violated NHPA. (ECF No. 19 at 5-22.) The Court addresses below each of the four claims.

#### 1.  Breach of Contract

Federal Defendants argue in pertinent part that SLPT's claim that BLM breached the MOA is barred by the doctrine of sovereign immunity. (ECF No. 26 at 20.) The Court agrees. SLPT is accordingly unlikely to—indeed, cannot—prevail on this claim.

To start, as alleged in the Complaint, SLPT's claim for breach of contract is expressly based on contractual rights purportedly created by the MOA. (ECF No. 1 at 32-34, 36.) Moreover, SLPT does not seek monetary damages for this breach. It seeks specific performance of the MOA. (*Id.* at 38.) Because the duty SLPT seeks to enforce derives from the MOA and SLPT seeks specific performance, SLPT's breach of contract claim is barred by the doctrine of sovereign immunity. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998): *see also generally id.* (reaching analogous conclusion).[3] Plaintiffs are accordingly not only unlikely to succeed on this claim, but the Court also lacks jurisdiction over it. *See id.* at 647.

---

[2]Implicitly, Plaintiffs do not argue they are likely to prevail on the merits of their other claims, so the Court does not address those other claims here. And the Court assumes without deciding that Plaintiffs concede they are unlikely to prevail on the claims they do not explicitly raise in their Motion.

[3]Plaintiffs attempt to distinguish this case in reply but their attempt is unpersuasive. (ECF No. 31 at 10.) They specifically rely on subsection III.B. of the discussion in *Tucson Airport Auth.*, 136 F.3d at 646 (*see* ECF No. 31 at 10), but do not discuss the import of subsection III.C., along with Sections IV., V., and VI., which determinatively indicate by analogy that SLPT's claim based on a purported breach of the MOA is barred by the doctrine of sovereign immunity. *See Tucson Airport Auth.*, 136 F.3d at 646-48.

### 2. NHPA Claim – Pre-ROD Consultation with SLPT

SLPT argues it is likely to prevail on this claim because BLM's attempts to consult with it constitute 'contact' but not 'consultation.' (ECF No. 19 at 8-9.) But to start, SLPT's argument contradicts itself, and SLPT's own Complaint, in certain material ways. For example, SLPT leads off its argument by repeating the allegation from its Complaint that BLM 'failed to consult' with SLPT before issuing the ROD. (*Id.* at 9.) However, SLPT states in the very next sentence, "BLM will likely contend that letters it claims it sent to SLPT on December 12, 2019; July 29, 2020; and August 28, 2020 are 'consultation.'" (*Id.* at 9.) SLPT did not mention these three letters in its Complaint. (*See generally* ECF No. 1.) SLPT therefore concedes it received these three letters—in which, as described *supra* in Section II, BLM attempted to initiate consultation—undermining SLPT's repeated allegation in its Complaint that BLM simply failed to consult with SLPT. The Court accordingly cannot say that SLPT is likely to prevail on its claim that 'BLM failed to consult SLPT before the ROD issued' because even SLPT does not appear to stand by it. Said otherwise, SLPT says in its Motion, but not in its Complaint, that it received three letters that arguably could constitute consultation.

Setting aside that SLPT's argument in its Motion is unsupported by, and indeed contradicts, the allegations in its Complaint, it appears that SLPT is making a more nuanced argument in its Motion than in its Complaint focusing on the meaning of the word 'consultation'—that BLM's attempts to initiate consultation were mere, and legally insufficient, 'contact.' (ECF No. 19 at 9.) However, the Court finds even this argument unpersuasive because SLPT does not address the evidence of consultation that BLM proffers in response to the Motion (again, despite mentioning a few letters SLPT received from BLM about the Project) and finds the two cases SLPT relies on distinguishable from the circumstances presented here. Moreover, SLPT does not specifically address any of the evidence of consultation BLM proffered with its response to the Motion in reply. (ECF No. 31.)

///

As described *supra* in Section II, BLM attempted to consult with SLPT on the Ethnographic Assessment—covering a geographic area encompassing the Project area—back in 2005 but nobody from the tribe attended a meeting about it contrary to a purported oral statement by Chairperson Burdette. (ECF No. 26-1 at 59.) And more notably, SLPT representatives who attended in-person meetings regarding the Kings Valley Lithium Clay project indicated it was outside their immediate area of interest and that they wanted to focus on projects closer to their reservation. (ECF No. 26-2 at 16.) This is notable because the Kings Valley Lithium Clay project is one of the predecessor projects to the Project, meaning it is in precisely the same geographic area as the Project. (ECF No. 1 at 10, 12.) SLPT accordingly told BLM it did not wish to be consulted on a project both in the same area as the Project and with the same general subject matter—lithium extraction. This could have been a reasonable basis for BLM not to consult with SLPT on the Project.

But BLM nonetheless did attempt to consult with SLPT on the Project.[4] In addition to publishing notices in the Federal Register, BLM sent SLPT four letters between December 2019 and the time it issued the ROD. *See supra* Section II. SLPT did not respond to any of these letters. BLM could reasonably infer from SLPT's nonresponse to these letters—coupled with the earlier statements from SLPT members that they did not wish to be consulted on projects in the same geographic area as the Project—that it did not need to inquire further or more forcefully with SLPT. It is also notable that SLPT acknowledges receipt of three of these letters but offers no specific explanation as to why

---

[4]The Court agrees with Federal Defendants that SLPT lacks prudential standing to assert a claim on behalf of unnamed tribes that BLM's decision about which other tribes to consult with was unreasonable. (ECF No. 26 at 25 n.47.) BLM attempted consultation with SLPT, so the pertinent question is instead whether that attempted consultation was adequate. Moreover, the Court addressed and rejected RSIC and BPT's claims that BLM's decision not to consult them was unreasonable in *Bartell Ranch*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279 at 36-47. In addition, the Court also agrees with Federal Defendants that SLPT lacks prudential standing to assert the interests of the State of Nevada's Historic Preservation Office. (*Id.* at 27 n.55.) *See also Bartell Ranch*, 558 F. Supp. 3d 974, 980 (D. Nev.), *reconsideration denied*, 570 F. Supp. 3d 945 (D. Nev. 2021), *appeal dismissed*, No. 22-15059, 2022 WL 1165410 (9th Cir. Apr. 4, 2022) (finding RSIC could not assert the interests of other tribes BLM consulted). The Court accordingly does not address in further detail these other theories mentioned in the portions of the Complaint and Motion addressing SLPT's pre-ROD NHPA consultation claim.

it did not respond to them. (ECF No. 19 at 8-12.) SLPT does mention the COVID-19 pandemic, but also concedes it received the December 12, 2019, letter attempting to initiate consultation, which predated the widespread lockdowns imposed in response to COVID-19 by several months. (*Id.*) And even with respect to letters received later, if SLPT had wanted to further consult with BLM on the Project, it could have responded to any of the three letters it admittedly received. Or at least, SLPT has not provided any explanation—much less evidence—as to why BLM should have inquired further to attempt to force consultation with SLPT before issuing the ROD. BLM's attempts to consult with SLPT were reasonable given the circumstances.

Indeed, this pattern of interaction is similar to the pattern of interaction found sufficient in *Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 608 F.3d 592, 608-10 (9th Cir. 2010). There, like here, the agency had consulted with the tribe on a project in the same spot as the challenged project and the tribe had not challenged the sufficiency of consultation on the prior project. *See id.* Here, as noted, SLPT stated it did not wish to be further consulted on the Kings Valley Lithium Clay project. In addition, here, like there, SLPT does not indicate what information it would have shared with BLM if SLPT had chosen to respond to any of BLM's letters about the Project sent before BLM issued the ROD. *See id.* When SLPT eventually did respond to a letter about the HPTP sent after the ROD issued, SLPT simply said it had an interest in every property identified in the HPTP and asked BLM to halt all work. (ECF No. 3 at 9-10.) *Te-Moak Tribe* accordingly supports the Court's finding that BLM's attempts to consult with SLPT were reasonable given the circumstances.

SLPT's argument relies on the quotation, "[c]ontact, of course, is not consultation, and 'consultation with one tribe doesn't relieve the [agency] of its obligation to consult with any other tribe.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205 F. Supp. 3d 4, 32 (D.D.C. 2016) (quoting *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 755 F. Supp. 2d 1104, 1112, 1118 (S.D. Cal. 2010)). (ECF No. 19 at 9.) But this quotation is pulled from a portion of a decision where the *Standing Rock*

1  *Sioux Tribe* court found the plaintiff tribe was unlikely to prevail on the merits of its NHPA
2  claim. *See id.* at 32-34. This was in part because, like here, the facts did not support the
3  plaintiff tribe's allegations—that court instead found that the pertinent agency had tried to
4  consult with the tribe on many occasions, but the tribe largely refused. *See id.* Indeed, the
5  *Standing Rock Sioux Tribe* court even distinguished *Quechan Tribe*, 755 F. Supp. 2d
6  1104, "where a tribe entitled to consultation actively sought to consult with an agency and
7  was not afforded the opportunity." 205 F. Supp. 3d at 33 (citation omitted). *Standing Rock*
8  *Sioux Tribe* thus does not support SLPT's argument it is likely to prevail on the merits of
9  its NHPA claim.

10  And neither does *Quechan Tribe*, 755 F. Supp. 2d 1104. The key difference
11  between this case and *Quechan Tribe* is that there, the tribe responded to BLM's letters
12  and requested more in-depth consultation, but BLM either ignored or never granted those
13  requests. *See id.* at 1118-20. The tribe in *Quechan Tribe* also repeatedly requested more
14  time to consult before BLM made its final decision, and BLM also ignored those pleas.
15  *See id.* Here, SLPT simply never responded to BLM's multiple letters, and never requested
16  more time for consultation until well after the ROD issued. Indeed, this case is more like
17  another case filed by the same tribe, *Quechan Tribe of Ft. Yuma Indian Rsrv. v. U.S. Dep't*
18  *of the Interior*, 927 F. Supp. 2d 921, 930-33 (S.D. Cal. 2013), *aff'd sub nom. Quechan*
19  *Tribe of the Fort Yuma Indian Rsrv. v. U.S. Dep't of the Interior*, 673 F. App'x 709 (9th Cir.
20  2016), where the court found BLM's Section 106 consultation was sufficient because it
21  sent numerous letters to the tribe asking them to engage in consultation and the tribe
22  never took BLM up on its invitation. Said otherwise, *Quechan Tribe*, 755 F. Supp. 2d 1104
23  is distinguishable because SLPT never responded to any of BLM's communications until
24  after the ROD issued.

25  In sum, the Court does not find that SLPT is likely to prevail on the merits of its
26  NHPA claim.[5]

---

28  [5]Alternatively, the Court agrees with Lithium Nevada that SLPT is unlikely to prevail on the affirmative defense of laches. (ECF No. 27 at 11-12 (making the argument).) *See*

11

### 3. FLPMA

Plaintiffs argue they are likely to prevail on their FLPMA claim based on Federal Defendants' purported authorization of new work under old permits Lithium Nevada holds in the Project area because the ROD allegedly terminated those prior permits—meaning that any new work authorized under the old permits constitutes unnecessary and undue degradation prohibited by FLPMA because it is unauthorized. (ECF No. 19 at 14-16.) Federal Defendants counter Plaintiffs are unlikely to succeed on this claim because the ROD did not terminate the prior permits, which may only be terminated once the Project approved in the ROD is fully bonded—and that happened on February 23, 2023, not the date the ROD issued. (ECF No. 26 at 22-25.) Lithium Nevada similarly counters that it "was only 'authorized' to begin work under the ROD after obtaining all necessary state permits, securing a bond, [and obtaining a] BLM issued Notice to Proceed ("NTP")." (ECF No. 27 at 17; *see also id.* at 17-21.) Plaintiffs merely reiterate their argument in reply. (ECF No. 31 at 13.) The Court agrees with Federal Defendants and Lithium Nevada.

///

---

*Apache Survival Coal. v. United States*, 21 F.3d 895, 905-14 (9th Cir. 1994). SLPT does not explain why it waited to bring this claim until over two years after the ROD issued, and that delay seems particularly long considering SLPT's statement that was it aware of the preliminary injunction proceedings in the *Western Watersheds* case. (*See* ECF No. 3 at 48.) One cannot claim anything other than inexcusable delay when one offers no excuse at all. *See Apache Survival Coal.*, 21 F.3d at 911-12 (finding inexcusable delay weighs in favor of applying laches). And while the Court does not understand construction on the Project to be as advanced as the telescopes in *Apache Survival Coal.*, Plaintiffs allege it has started (ECF No. 1 at 2), and Plaintiffs, like the plaintiffs in *Apache Survival Coal.*, offer merely a general objection to any and all activity in an area encompassing the Project area. However, "even if an injunction were issued pending completion of the NHPA process (assuming NHPA indeed has been violated), the telescopes would not be removed from the mountain." 21 F.3d at 913. Similarly, here, even if the Court were to issue an injunction, it could not undo the ground disturbance that has happened within the Project area in the last decade—or longer. *See Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163-65 (9th Cir. 2018); *see also id.* at 1165 ("If that effort was not successful, it is because the Tribe insisted on a full consultation under section 106, which was not legally required, and a complete ban on mining around Red Butte, which the Forest Service lacks the authority to impose."). In reply, Plaintiffs attempt to pin any delay on Lithium Nevada (ECF No. 31 at 2-3), but the laches inquiry, as pertinent here, considers SLPT's delay, not Lithium Nevada's. *See Apache Survival Coal.*, 21 F.3d at 905 ("To demonstrate laches, a party must establish '"(1) lack of diligence by the party against whom the defense is asserted . . ."'").

The Court does not find Plaintiffs are likely to prevail on their FLPMA claim because it appears to be based on a misunderstanding of the way BLM's permitting process works. Moreover, accepting Plaintiffs' argument that the ROD immediately terminated all prior permits seems more likely to lead to unnecessary and undue degradation than the permitting process as it apparently works.

Plaintiffs' argument is based on this sentence from the Project's FEIS, "Authorization of this POO and Plan will terminate the KVCM POO (N91547), Kings Valley Lithium Exploration Project (N85255), the Quinn River Valley Test Wells NOI (N94510), the Far East NOI (N95396) and all reclamation requirements." (ECF No. 19 at 15; *see also* ECF No. 26-8 at 15.) However, as Federal Defendants point out, Plaintiffs' argument reads out the final phrase, "and all reclamation requirements."  (ECF No. 26 at 22-23.) Federal Defendants instead explain that "all reclamation requirements" cannot terminate until the prior authorizations are rolled into a new financial guarantee associated with the Project. (*Id.*) And it is undisputed that BLM had not received or accepted any financial guarantee for the Project at the time BLM issued the ROD—that happened towards the end of February 2023. (*Id.* at 23; *see also* ECF No. 27 at 18 (stating Lithium Nevada got the NTP on February 24, 2023); ECF No. 19-1 at 5.) If, as Plaintiffs argue, the ROD immediately terminated the reclamation requirements associated with the old projects, there would have been no reclamation "financial guarantee in place for the unreclaimed Prior Authorizations for a period of over two years." (ECF No. 26 at 23-24.) And that would have violated various regulations requiring reclamation guarantees to prevent unnecessary and undue degradation. *See* 43 C.F.R. § 3809.312(c) ("You must provide to BLM a financial guarantee that meets the requirements of this subpart before beginning operations."); 43 C.F.R. § 3809.412 ("You must not begin operations until BLM approves your plan of operations and you provide the financial guarantee required under § 3809.551."). Thus,

the Court finds Federal Defendants' counterargument sufficiently persuasive that it does not find Plaintiffs are likely to prevail on the merits of their FLPMA claim.[6]

### 4. NHPA Claim – Post-Review Discovery Process

As to this claim, even Plaintiffs allege that Federal Defendants have not concluded the post-review discovery process they contend gives rise to the NHPA violation asserted on behalf of all Plaintiffs. (ECF No. 1 at 2 ("Without concluding the post-review discovery process or initiating the same processes for the older permits, BLM has allowed LNC to begin construction in Thacker Pass, and harm the Plaintiffs' traditional cultural property, under permits that were supposed to have been terminated upon the approval of the Thacker Pass ROD."), 3 ("after initiating"), 36 (asserting the claim is brought on behalf of all Plaintiffs).) And Plaintiffs do not otherwise allege a final agency action that would permit the Court to review this claim. (*See generally id.*) "Absent final agency action, there [is] no jurisdiction in the district court to review the [NHPA] claim." *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1104 (9th Cir. 2007). (*See also* ECF No. 26 at 29-31 (making the argument and stating, supported by evidence, that the process is not yet complete); ECF No. 27 at 21-23 (making the same argument and also agreeing there is not yet a final agency action to review).) Said otherwise, Plaintiff's claim regarding the post-review discovery process is not ripe. *See Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) ("[f]inal agency action pursuant to the Administrative Procedure Act is a 'crucial prerequisit[e]' to ripeness.'") (citation omitted). Either way, the Court cannot—and does not—find that Plaintiffs are likely to prevail on their claim based on the post-review discovery process.

///

---

[6]Federal Defendants' argument also makes good policy sense. If every ROD for a project in an area also covered by prior authorizations immediately terminated the reclamation requirements for those prior authorizations, public lands would be without the assurance of reclamation guarantees for indefinite periods of time. This could allow project proponents to harm public lands and not have to pay for the damage during those lapses. That would be precisely the sort of unnecessary and undue degradation FLPMA is intended to prevent.

14

In reply, Plaintiffs point to the requirement from 36 C.F.R. § 800.1(c) that federal agencies must complete the Section 106 consultation process before issuing a license. (ECF No. 31 at 6.) However, the Court found in *Bartell Ranch*—as to RSIC and BPT—and *supra* as to SLPT[7] that BLM adequately completed the Section 106 consultation process before issuing the ROD. Plaintiffs fail to draw the necessary distinction between that Section 106 consultation process, and the consultation process that Plaintiffs have more recently initiated based on their contention that some area in or around Thacker Pass is a traditional cultural district.[8] And again, Plaintiffs do not dispute that this more recent, post-review discovery process has not yet been completed.

To the extent Plaintiffs are trying to force BLM to complete that process, Plaintiffs invoke 36 C.F.R. § 800.13. (ECF No. 31 at 9-10.) Most notably, Plaintiffs contend 36 C.F.R. § 800.13(b)(1) requires Federal Defendants to consult with them. (*Id.* at 9.) Federal Defendants agree that they are following the 36 C.F.R. § 800.13(b)(1) process, but point out that they informed Plaintiffs in a February 23, 2023, letter—attached as an exhibit to the Motion (ECF No. 19-2)—that such consultation is ongoing. (ECF No. 26 at 29-31.) Indeed, the letter asks RSIC to reach out to coordinate further government-to-government consultation. (ECF No. 19-2 at 3.) And this, in turn, leads the Court to conclude that the process is ongoing. Therefore, there is not yet a final agency action for the Court to review as to this claim. Moreover, in any event, the Court does not find any authorization in 36 C.F.R. § 800.13, much less obligation, for Federal Defendants to block construction under the ROD issued in 2021, or the prior authorizations that predate the ROD.

///

---

[7]To be more precise, the Court found that SLPT is not likely to prevail on the merits of this claim at this stage of these proceedings.

[8]The Court understands that Federal Defendants tentatively agree with Plaintiffs' contention. "BLM has preliminarily agreed that this proposed TCD is eligible for the National Register of Historic Places due to its association with the Peehee mu'huh Massacre and the 1865 Quinn River Massacre (Criterion A), and has requested additional consultation to define its borders and evaluate its eligibility under other criteria." (ECF No. 26 at 29-30.)

15

### C. Irreparable Harm

Moving to the second *Winter* factor, Plaintiffs generally argue that the construction work that has already begun on the Project will harm their traditional cultural property and restrict their ability to access land within the Project area for hunting, gathering, camping, hiking, and performing ceremony. (ECF No. 19 at 5.) Federal Defendants counter that there is no presumption of harm from a violation of a procedural statute like NHPA, Plaintiffs' delay weighs against a finding of irreparable harm, and even if Plaintiffs are successful in getting the entire Thacker Pass area declared a traditional cultural district, such a designation "would not undo the approval of the Thacker Pass Project or prevent activity approved by the ROD over 18 months before the TCD [traditional cultural district] was even proposed." (ECF No. 26 at 32: *see also id.* at 31-33.) Lithium Nevada echoes Federal Defendants' argument and again distinguishes *Quechan Tribe*, 755 F. Supp. 2d 1104, upon which Plaintiffs again rely in this portion of their Motion. (ECF No. 27 at 7-10.) The Court agrees with Federal Defendants and Lithium Nevada.

To start, Federal Defendants are correct that there is no presumption of irreparable harm here. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987) (finding a presumption of irreparable harm "contrary to traditional equitable principles" in the context of purported procedural violations of federal statutes). So Plaintiffs must show they will be irreparably harmed, and they have not made such a showing in their Motion.

While the parties dispute the extent to which further construction of the Project will harm Plaintiffs, and in which ways, there is no real dispute that Plaintiffs have substantially delayed filing their Motion. Indeed, Plaintiffs do not mention, much less attempt to explain, their substantial delay in filing the Motion. Plaintiffs' delay in seeking preliminary injunctive relief weighs determinatively against a finding of irreparable harm. *See Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.") (citation omitted). Lithium Nevada or its corporate predecessors have been disturbing the ground in or around the Project area since 2007 (ECF No. 26-8 at 14), and Chevron drilled

1 234 holes in the McDermitt Caldera in the 1970s and 80s (*id.* at 17). As noted, members of SLPT consulted on the predecessor Kings Valley Lithium Clay project in 2014—in person, and asked not to be consulted further. (ECF No. 26-2 at 16.) The ROD issued in January 2021. (ECF No. 26-10.) SLPT even wrote BLM a letter on June 3, 2021, asking BLM to halt all construction on the Project. (ECF No. 3 at 47-49.) But then SLPT waited until early 2023 to file this case, and then another two weeks to file the Motion. (ECF Nos. 1, 19.) And as noted, SLPT does not even attempt to explain this delay.

As for RSIC and BPT, they both participated in the *Bartell Ranch* litigation, where the Court denied their motion for a preliminary injunction, denied reconsideration, and ultimately rejected their claims on the merits. *See Bartell Ranch*, Case No. 3:21-cv-00080-MMD-CLB, ECF No. 279; *see also Bartell Ranch*, 558 F.Supp.3d 974, *reconsideration denied*, 570 F. Supp. 3d 945. RSIC's counsel explains that he decided to file the Motion when the Court denied the motions for injunction pending appeal (filed by other parties) in *Bartell Ranch*. (ECF No. 19-1 at 5-6.) But one of RSIC's claims in this case is not ripe, *see supra*, and the other stems from work plan approvals BLM issued between October and December 2022. Moreover, the Complaint includes the allegation that, "BPT's and RSIC's claims, here, are all rooted in BLM's post-ROD actions and failures to act and, therefore, were not – and, per the court, *could not* – be reviewed in *Bartell Ranch LLC v. McCullough*." (ECF No. 1 at 2-3.) It is accordingly unclear why RSIC and BPT waited two to five months to move for preliminary injunctive relief on their one claim that is ripe when they say they could not have asserted that claim in *Bartell Ranch* anyway.[9] And their explanation that they were waiting to see how *Bartell Ranch* would play out therefore does not follow.

In sum, SLPT waited some years to file the Motion, and RSIC and BPT waited a few months. SLPT offers no explanation for their delay, and RSIC and BPT offer some limited explanation through their counsel's declaration—that RSIC was waiting to see what

---

[9]As provided *supra*, the Court does not find Plaintiffs are likely to prevail on the one claim not specific to SLPT that is ripe.

would happen with *Bartell Ranch*. These explanations for Plaintiffs' substantial delays in seeking injunctive relief do not suffice. Moreover, Plaintiffs waited until construction on the Project had started—the very irreparable harm they seek to prevent (ECF No. 19 at 5)—to file this case (ECF No. 1 at 2). "By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action[.]" *Lydo Enterprises*, 745 F.2d at 1213 (citation omitted). Plaintiffs' delay in filing the Motion cuts determinatively against a finding of irreparable harm.

In addition, the extensive ground disturbance in and around the Project area described *supra* suggests that any further harm to Plaintiffs is not irreparable, because their ability to, for example, practice ceremony in the Thacker Pass area has been restricted to some degree for the many years in which authorized mining exploration activity has taken place. So really what is at stake from a harm perspective here is a marginal increase—perhaps by a large margin—on restrictions that already exist by virtue of the extensive ground disturbance and the mining infrastructure that also already exists in and around the Project area.

Because Plaintiffs have not made a sufficient showing on either the first or second *Winter* prong, the Court will deny the Motion.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' motion for a temporary restraining order and preliminary injunction (ECF No. 19) is denied.

DATED THIS 23rd Day of March 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE