TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
MICHAEL ROBERTSON (DC Bar 1017183)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0465
Fax: (202) 305-0275
arwyn.carroll@usdoj.gov
michael.robertson@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RENO-SPARKS INDIAN COLONY, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DEBRA HAALAND, Secretary of the Interior, *et al.,*<br><br>　　　　　Defendants. | Case No. 3:23-cv-70-MMD-CLB<br><br>**FEDERAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................. 1

LEGAL BACKGROUND .................................................................. 3

    I.     Motion to dismiss standard ......................................... 3

    II.    The National Historic Preservation Act .................... 4

    III.    The National Environmental Policy Act ................... 6

    IV.    The Federal Land Policy and Management Act ........... 7

    V.    Administrative Procedure Act review of agency action ............ 7

ARGUMENT ................................................................................ 8

    I.    SLPT's Breach of Contract claim is barred by the doctrine of sovereign immunity. .......................................................... 8

    II.    The Court lacks subject matter jurisdiction to consider Plaintiffs' unripe NHPA claim. .......................................................... 9

    III.    Summit Late Paiute Tribe's NHPA claim fails to allege facts plausibly entitling it to relief. .......................................................... 10

    IV.    Plaintiffs' NEPA claim fails to allege facts necessary to show supplemental environmental analysis is required. ........................ 15

    V.    Plaintiffs' FLPMA claim fails to allege facts plausibly entitling Plaintiffs to relief. .......................................................... 17

CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 4

*Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-C,
   LB, 2023 WL 1782343 (D. Nev. Feb. 6, 2023) ................................ 10, 12

*California Sportfishing Prot. All. v. Shiloh Group, LLC*,
   268 F. Supp. 3d 1029 (N.D. Cal. 2017) ......................................... 14

*Cold Mountain v. Garber*,
   375 F.3d 884 (9th Cir. 2004) .......................................................... 16

*Ctr. for Biological Diversity v. Salazar*,
   706 F.3d 1085 (9th Cir. 2013) ................................................... 16, 18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ........................................................................ 3

*GECCMC 2005–C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*,
   671 F.3d 1027 (9th Cir. 2012) ...................................................... 8

*Gen. Atomic Co. v. United Nuclear Corp.*,
   655 F.2d 968 (9th Cir. 1981) .......................................................... 3

*Habitat Educ. Ctr., Inc. v. U.S. Forest Serv.*,
   673 F.3d 518 (7th Cir. 2012) ......................................................... 15

*Kleppe v. Sierra Club*,
   427 U.S. 390 (1976) ...................................................................... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................ 3

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................ 7

*Marsh v. Oregon Natural Resources Council*,
   490 U.S. 360 (1989) ...................................................................... 15

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) .......................................................... 4

*Mir v. Little Co. of Mary Hosp.*,
   844 F.2d 646 (9th Cir. 1988) ...................................................... 4, 11

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*,
   177 F.3d 800 (9th Cir. 1999) .......................................................... 4

*N. Star Alaska v. United States*,
   14 F.3d 36 (9th Cir. 1994) .............................................................. 8

*Nevada v. Dep't of Energy,*
  457 F.3d 78 (D.C. Cir. 2006) ................................................................. 9

*Norton v. S. Utah Wilderness Alliance,*
  542 U.S 55 (2004) ................................................................................. 15

*Quechan Tribe of Ft. Yuma Indian Reservation v. U.S. Dep't of the Interior,*
  927 F. Supp. 2d 921 (S.D. Cal. 2013) ................................................... 14

*Rattlesnake Coal. v. EPA,*
  509 F.3d 1095 (9th Cir. 2007) ............................................................. 7, 9

*Robertson v. Methow Valley Citizens Council,*
  490 U.S. 332 (1989) ............................................................................... 6

*Robinson v. United States,*
  586 F.3d 683 (9th Cir. 2009) .............................................................. 3, 4

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
  205 F. Supp. 3d 4 (D.D.C. 2016) .......................................................... 14

*Summit Lake Paiute Tribe of Nev. v. U.S. Bureau of Land Mgmt.,*
  496 F. App'x 712 (9th Cir. 2012) ........................................................... 5

*Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of the Interior,*
  608 F.3d 592 (9th Cir. 2010) ............................................................... 14

*Thompson v. McCombe,*
  99 F.3d 352 (9th Cir. 1996) ................................................................... 3

*Tucson Airport Auth. v. Gen. Dynamics Corp.,*
  136 F.3d 641 (9th Cir. 1998) ................................................................. 8

*United States v. Park Place Assocs., Ltd.,*
  563 F.3d 907 (9th Cir. 2009) ................................................................. 8

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................... 4

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*
  135 F.3d 658 (9th Cir. 1998) ................................................................. 3

*Yankton Sioux Tribe v. U.S. Army Corps of Eng'rs,*
  194 F. Supp. 2d 977 (D. S.D. 2002) ..................................................... 19

**Statutes**

28 U.S.C. § 2501 ........................................................................................ 19

42 U.S.C. § 4332(2)(C) ................................................................................ 7

43 U.S.C. § 1732(b) ............................................................................... 7, 17

54 U.S.C. § 306108 ..................................................................................... 4

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 4

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 3

Fed. R. Civ. P. 12(h)(3) .............................................................................................. 3

**Regulations**

36 C.F.R. Part 800 ...................................................................................................... 5

36 C.F.R. § 800.13 ................................................................................................... 3, 6

36 C.F.R. § 800.13(b)(1) ............................................................................................ 3

36 C.F.R. § 800.13(c) ................................................................................................. 3

36 C.F.R. § 800.13(b)-(c) ........................................................................................... 6

36 C.F.R. § 800.2(c)(2)(ii) ....................................................................................... 5, 6

36 C.F.R. § 800.3-800.7 ............................................................................................. 5

36 C.F.R. § 800.4(b)(1) .............................................................................................. 5

36 C.F.R. § 800.5(d)(2) .............................................................................................. 5

36 C.F.R. § 800.6(c) ................................................................................................... 2

36 C.F.R. § 800.8(a)(1) .............................................................................................. 6

40 C.F.R. § 1501.3(a)(3) ............................................................................................ 7

40 C.F.R. § 1502.9(d)(1) ............................................................................................ 7

40 C.F.R. § 1508.1(g)(1) (2021) ................................................................................ 6

40 C.F.R. § 1508.1(g)(4) (2022) ................................................................................ 7

40 C.F.R. § 1508.1(q)(iii) ......................................................................................... 15

43 C.F.R. § 3809.2(a) ................................................................................................. 7

43 C.F.R. §§ 3809.21, 3809.11(a), 3809.312 .......................................................... 19

43 C.F.R. §§ 3809.552(a), 3809.582 ......................................................................... 7

43 C.F.R §§ 3809.332 .............................................................................................. 18

85 Fed. Reg. 45651-01 (July 29, 2020) ................................................................... 13

85 Fed. Reg. 3413-02 (Jan. 21, 2020) ..................................................................... 13

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| APA | Administrative Procedure Act |
| APE | Area of Potential Effects |
| BLM | Bureau of Land Management |
| BPT | Burns Paiute Tribe |
| DEIS | Draft Environmental Impact Statement |
| EIS | Environmental Impact Statement |
| FEIS | Final Environmental Impact Statement |
| FLPMA | Federal Land Policy and Management Act |
| HPTP | Historic Properties Treatment Plan |
| MOA | Memorandum of Agreement |
| NEPA | National Environmental Policy Act |
| NHPA | National Historic Preservation Act |
| ROD | Record of Decision |
| RSIC | Reno-Sparks Indian Colony |
| SHPO | State Historic Preservation Officer |
| SLPT | Summit Lake Paiute Tribe |

This case presents a second round of litigation over events related to the U.S. Bureau of Land Management's ("BLM") January 15, 2021 decision approving Lithium Nevada Corporation's Thacker Pass Project in northern Nevada.    Three federally recognized Tribes—the Reno-Sparks Indian Colony ("RSIC"), the Burns Paiute Tribe ("BPT"), and the Summit Lake Paiute Tribe ("SLPT")—bring various legal challenges connected to BLM's tribal consultation efforts before and after approval of the Project.  Plaintiffs assert a breach of contract claim and claims under the Administrative Procedure Act ("APA"), alleging that BLM violated the National Historic Preservation Act ("NHPA"), the National Environmental Policy Act ("NEPA"), and the Federal Land Policy and Management Act ("FLPMA").

Plaintiffs' claims suffer from serious defects and should be dismissed in their entirety. First, Plaintiffs' breach of contract claim is barred by Defendants' sovereign immunity. Second, post-review discovery consultation is on-going and Plaintiffs' NHPA claim based on that consultation is unripe.  Third, the separate NHPA claim brought by SLPT concerning the adequacy of BLM's prior consultation efforts fails to state a plausible claim for relief. Fourth, Plaintiffs' NEPA claim fails to allege that a major Federal action remains to occur or that significant new information has become available to warrant a supplemental environmental analysis.  Finally, Plaintiffs' FLPMA claim is premised on a misunderstanding of BLM's permitting process.    In sum, Plaintiffs' claims present jurisdictional defects, fail to state claims upon which relief can be granted, and should be dismissed in their entirety.

## FACTUAL BACKGROUND

The factual history of BLM's approval of Lithium Nevada Corporation's Thacker Pass Project ("Project") is detailed across the extensive briefing and the Court's orders in the consolidated case *Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080 (D. Nev. filed Feb. 11, 2021).  Two of the three Plaintiffs in this case—RSIC and BPT—were also plaintiffs in *Bartell Ranch* and their relationship to the Project has been litigated and well-documented.  To the

extent this case explores new factual territory concerning either SLPT in particular, or BLM's interactions with the tribes following approval of the Project, that ground has likewise been well-covered in the briefing and the Court's order on Plaintiffs' Motion for a Preliminary Injunction.  (*See* ECF Nos. 19, 26, 27, 31, 32).  Therefore, Defendants will note the facts particularly relevant to this Motion only briefly.

As with RSIC and BPT, BLM has engaged in government-to-government NHPA consultation efforts with SLPT in the past.[1]  But unlike those tribes, although SLPT had previously expressed disinterest in the Project area, BLM identified SLPT for consultation based on BLM's identification criteria and analysis.[2]  Throughout development of the Project, BLM invited SLPT to provide assistance in identifying cultural and historic resources that could be affected by the Project and ways to protect tribal interests in the area.[3]  SLPT did not respond to BLM's invitations.  Nor did Plaintiffs sign as concurring parties the Memorandum of Agreement ("MOA") entered into between BLM and the Nevada State Historic Preservation Officer ("SHPO").  The MOA "evidences the agency official's compliance with section 106," 36 C.F.R. § 800.6(c), and was provided to the tribes.[4]

Only after the Record of Decision ("ROD") for the Project issued on January 15, 2021, did SLPT and Plaintiffs notify BLM for the first time of their interests in the Project area.[5]  Based on this and other post-ROD correspondence and information presented during the *Bartell Ranch* litigation, BLM became aware of an unanticipated, post-review discovery outside the defined Area of Potential Effects ("APE") of the Project and began to engage in

---

[1] *See* Fed. Defs.' Opp'n to Mot. for Prelim. Inj. at 2, ECF No. 26.

[2] *See*, *id*. at 3.

[3] *E.g.*, Dec. 12, 2019 letter from BLM to SLPT, ECF No. 26-3.

[4] MOA, Pls.' App. Vol. 2, Ex. 35, ECF No. 3.  The MOA also incorporated a Historic Properties Treatment Plan ("HPTP") to resolve adverse effects to historic properties anticipated from the Project.  *Id*. at Ex. 35, p. 2; Hall Decl. Ex. A (HPTP), ECF No. 26-11.

[5] *See* Fed. Defs.' Opp'n to Mot. for Prelim. Inj. at 4-5, ECF No. 26; Compl. ¶¶ 65, 81, 83, 85, ECF No. 1.

**Fed. Defs.' Mot. to Dismiss**                                                    2

post-review discovery consultation with tribes in accordance with 36 C.F.R. § 800.13.[6]  That process provides additional opportunities for tribes to engage with BLM; for BLM to make reasonable efforts to avoid, minimize or mitigate adverse effects to historic properties; and for BLM to determine whether any newly discovered property is eligible for listing on the National Register of Historic Places.  36 C.F.R. § 800.13(b)(1), (c).  Nothing in § 800.13, however, permits BLM to withdraw prior authorizations or halt lawfully authorized construction activities.  The § 800.13 post-review consultation process remains on-going.[7]

## LEGAL BACKGROUND

### I.   Motion to dismiss standard

Federal district courts "are 'courts of limited jurisdiction.'"  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "They possess only that power authorized by Constitution and statute."  *Id.* (citation omitted).

Accordingly, a court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3); *see also* Fed. R. Civ. P. 12(b)(1).  The party invoking the court's subject-matter jurisdiction—here, the plaintiffs—bears the "burden of proving its existence."  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A federal court is presumed to lack jurisdiction in a particular case unless the plaintiff makes a showing to the contrary.  *Kokkonen*, 511 U.S. at 377; *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981).

While all well-pleaded allegations of material fact in a motion to dismiss are taken as true and construed in the light most favorable to the non-moving party, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), a court addressing a Rule 12(b)(1)

---

[6] Pls.' App. Vol. 2, Exs. 23-24, ECF No. 3.

[7] *E.g.*, Feb. 23, 2023 letter from BLM to RSIC, ECF No. 19-2; March 13, 2023 letter from BLM to SLPT, ECF No. 26-19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

motion to dismiss for lack of subject matter jurisdiction is not necessarily restricted to the face of the pleadings, *Robinson*, 586 F.3d at 685 (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Rather, the court may consider declarations or other evidence if necessary to resolve factual questions bearing on the jurisdictional issue without converting the motion into one for summary judgment. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citing *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983)).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). A complaint that merely presents legal conclusions or the elements of a cause of action will not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In making that determination, courts may look outside the pleading and take judicial notice of matters of public record. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Together, where publicly available information and plaintiffs' allegations demonstrate that plaintiffs fail to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), the complaint must be dismissed.

## II.   The National Historic Preservation Act

The NHPA sets forth procedural requirements for federal agencies to "take into account the effect of [an] undertaking on any historic property." 54 U.S.C. § 306108. The NHPA, like NEPA, "is a stop, look, and listen provision that requires each federal agency to consider the effects of its programs." *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d

800, 805 (9th Cir. 1999) (internal citations omitted).  The regulations governing federal agency compliance with the NHPA consultation process, are codified at 36 C.F.R. Part 800.

Pursuant to a National Programmatic Agreement, in Nevada, the procedures set forth in 36 C.F.R. § 800.3 through § 800.7 have been replaced with the 2014 BLM-State Historic Preservation Officer State Protocol Agreement ("Protocol").[8]  Under the Protocol, once BLM has determined that an agency action is an "undertaking," it: (1) identifies the "historic properties" within the APE potentially affected by the undertaking that are listed or eligible for listing on the National Register; (2) evaluates the proposed undertaking's effects on those properties; and (3) considers measures to avoid, mitigate, or minimize those effects, if any were found.[9]  At various steps, the agency, after making "a reasonable and good faith effort to identify Indian tribes" that attach religious and cultural significance to historic properties that may be affected by the undertaking, must consult with the tribes.  36 C.F.R. § 800.2(c)(2)(ii)(A).

The Protocol directs BLM to undertake "project-specific surveys and other efforts" to reasonably identify historic properties, including the documentation of previous adequate inventories of the APE.[10]  Other efforts "may include background research, consultation, oral history interviews, sample field investigation, and field survey" and "shall take into account past planning, research and studies."  36 C.F.R. § 800.4(b)(1).  The NHPA regulations' good-faith standard, however, does not require the agency to use all of those techniques.  *Summit Lake Paiute Tribe of Nev. v. U.S. Bureau of Land Mgmt.*, 496 F. App'x 712, 715 (9th Cir. 2012).  If the agency finds the undertaking will adversely affect historic properties, it engages in further consultation regarding the resolution of any such effects.[11]

---

[8] BLM-State Historic Preservation Officer State Protocol Agreement, ECF No. 26-18. The Protocol was amended in 2021 to extend its term to 2026.

[9] Protocol §§ I, V.A, V.C, V.F; 36 C.F.R. §§ 800.3–800.6; *see also id.* § 800.16(l)(1) (defining "historic property").

[10] Protocol § V; *id.* at § V.A.3.b.

[11] Protocol § V.F; 36 C.F.R. § 800.5(d)(2).

For engagement with Native American tribes, the Protocol defers to 36 C.F.R. § 800.2(c)(2)(ii).[12]   Accordingly, the agency must "consult with any Indian tribe . . . that attaches religious and cultural significance to historic properties that may be affected by an undertaking."  36 C.F.R. § 800.2(c)(2)(ii).  The agency must "make a reasonable and good faith effort to identify" such tribes or organizations.  *Id.* § 800.2(c)(2)(ii)(A).  The agency must then provide the tribe "a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects."  *Id.*

The Protocol does not replace the procedures set forth in 36 C.F.R. § 800.13 governing post-review discoveries.  Section 800.13 provides that when "historic properties are discovered or unanticipated effects on historic properties found" after completion of the consultation process noted above, the agency must take additional steps which may include additional consultation; reasonable efforts to avoid, minimize, or mitigate adverse effects to properties; and consideration of whether the newly discovered property is eligible for listing on the National Register of Historic Places.  36 C.F.R. § 800.13(b)-(c).

## III.   The National Environmental Policy Act

NEPA serves the dual purpose of informing agency decision-makers of the significant environmental effects of proposed major Federal actions and ensuring that relevant information is made available to the public so that they "may also play a role in both the decisionmaking process and the implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).   When considering a proposed action's environmental effects, the agency must take into account not only ecological effects, but also

---

[12] Protocol at 2.

historic and cultural effects.  40 C.F.R. § 1508.1(g)(1) (2021);[13] *see also* 36 C.F.R. § 800.8(a)(1) (encouraging agencies to coordinate NHPA and NEPA compliance).

To meet its dual purposes, NEPA requires that an agency prepare a comprehensive Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment[.]"  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.3(a)(3) .  The agency must also prepare a supplemental EIS "if a major Federal action remains to occur, and; . . . (ii) [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9(d)(1).

## IV.     The Federal Land Policy and Management Act

FLPMA requires that, in managing the public lands, the Secretary of the Interior "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).  This standard governs how BLM manages surface disturbance connected with mining operations on the public lands through its regulations at 43 C.F.R. subpart 3809.  Those regulations, which apply (with exceptions not relevant here) to "all operations authorized by the mining laws on public lands," 43 C.F.R. § 3809.2(a), require an approved "plan of operations" before mining operations or exploration causing more than five acres of surface disturbance can begin, *id.* § 3809.11(a).  They also require an operator to provide a financial guarantee sufficient to cover the estimated cost of reclamation, which must be maintained until replaced with another guarantee or until BLM releases it after reclamation is complete.  43 C.F.R. §§ 3809.552(a), 3809.582.

## V.      Administrative Procedure Act review of agency action

Where a statute—such as the NHPA, NEPA, and FLPMA—does not provide a

---

[13] When BLM issued the Final Environmental Impact Statement ("FEIS") and ROD for the Thacker Pass Project on December 4, 2020, and January 15, 2021, respectively, the 2019 Council on Environmental Quality ("CEQ") regulations were in force.  In 2021 and during the post-review discovery consultation at issue here, however, new CEQ regulations were adopted and are therefore referenced accordingly.  *See also* 40 C.F.R. § 1508.1(g)(4) (2022).

private right of action, the APA provides for judicial review of the merits for challenges to agency actions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). But the agency's action must be final before the court may review it—"[a]bsent *final* agency action, there [is] no jurisdiction in the district court to review" a claim. *Rattlesnake Coal.*, 509 F.3d at 1104 (emphasis added). And "the APA does not waive sovereign immunity for contract claims seeking [equitable] relief." *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994) (alteration in original) (citation omitted).

## ARGUMENT

**I.   SLPT's Breach of Contract claim is barred by the doctrine of sovereign immunity.**

SLPT's breach of contract claim (Compl. ¶ 155) must be dismissed. As the Court has already concluded, that claim "is barred by the doctrine of sovereign immunity." Order at 7, ECF No. 32. That is because the United States has not waived sovereign immunity on claims, such as SLPT's, seeking injunctive relief against it under a breach-of-contract theory. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998); *N. Star Alaska*, 14 F.3d at 38 ("[T]he APA does not waive sovereign immunity for contract claims seeking [equitable] relief." (second alteration in original)).

Nor is SLPT's breach of contract claim "statutorily based" such that it could evade the United States' sovereign immunity. *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 931 (9th Cir. 2009) (quoting *N. Star Alaska*, 14 F.3d at 37) ("Whether a claim is contractually or statutorily based depends upon the 'source of the rights upon which the plaintiff bases its claim.'"). SLPT's breach of contract claim requests specific performance of the MOA in the form of a dispute resolution process. Compl. ¶¶ 155, 163. The Ninth Circuit has made clear that such claims are contractually based and barred by the United States' sovereign immunity. *See Park Place Assocs.*, 563 F.3d at 931 (expressing "no doubt" that specific performance of a contract was contractually based and thus the United States was immune from suit). SLPT has demonstrated no waiver of sovereign immunity or alleged any other vehicle for this claim, and so it must be dismissed.

Even if the Court found sovereign immunity waived here, however, SLPT's claim is barred because, at minimum, it is not a party to the MOA.  It is a fundamental principle of contract law "that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."  *GECCMC 2005–C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012).  SLPT identifies no consideration paid, but instead invokes its status as a "concurring party" to the MOA based solely on the signature page listing it under "concurring parties."[14]  Notably, however, the space above SLPT's name is empty.  Though SLPT was invited to be a concurring party, SLPT never signed the MOA to accept that invitation.  And SLPT tacitly concedes this, as it does not allege that it ever signed the agreement.[15]  SLPT also does not allege that it is a third-party beneficiary of the agreement.  Having failed to allege any plausible basis for being entitled to specific performance of the MOA, SLPT's breach of contract claim must be dismissed.

## II.   The Court lacks subject matter jurisdiction to consider Plaintiffs' unripe NHPA claim.

Plaintiffs' claim challenging the NHPA post-review discovery process (Compl. ¶ 153) should be dismissed because, as the Court has already concluded, it is not ripe.  Order at 14, ECF No. 32.  "[A]bsent *final* agency action, there [is] no jurisdiction in the district court to review" a claim.  *Rattlesnake Coal.*, 509 F.3d at 1104 (emphasis added).  Accordingly, a challenge to agency action is not ripe for judicial review until it is final.  *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006).

BLM is still engaged in the post-review discovery consultation process.  BLM's

---

[14] Mot. at 6, ECF No. 19 (citing ECF No. 3 at 148). SLPT neither pleads nor argues that it is a third-party beneficiary.

[15] And even were SLPT a party to the MOA, this claim must be dismissed as moot because BLM has complied with the MOA.  *See* Fed. Defs.' Opp'n to Mot. for Prelim. Inj. at 12-13, ECF No. 26 (explaining that BLM has sought consultation with SLPT to resolve its objection as if SLPT were a concurring party and SLPT's failure to allege facts that would otherwise constitute a breach).

February 23, 2023 letter to RSIC outlines the steps in that process. ECF No. 19-2 (requesting additional consultation and information gathering and noting that those efforts will be followed by a formal eligibility determination, post-eligibility determination consultation, and various steps in the event of disagreement over BLM's eligibility determination). Thus, as the Court has observed, "Plaintiffs allege that Federal Defendants have not concluded the post-review discovery process they contend gives rise to the NHPA violation" and "Plaintiffs do not otherwise allege a final agency action that would permit the Court to review this claim." Order at 14, ECF No. 32. Plaintiffs' NHPA claim challenging the post-review discovery process should therefore be dismissed.

## III. Summit Late Paiute Tribe's NHPA claim fails to allege facts plausibly entitling it to relief.

The Court should also dismiss SLPT's independent NHPA claims. SLPT asserts that BLM (1) failed to make a reasonable and good faith effort to identify tribes for consultation, (Compl. ¶ 151); (2) failed to consult with SLPT, (*id.*); and thus in doing so, (3) failed to make a reasonable and good faith effort to identify historic properties (*id.* at ¶ 152).[16] In light of SLPT's own concessions and public records for which the Court may take judicial notice, SLPT's thin factual allegations cannot plausibly entitle it to relief.

The Court has previously determined that BLM identified SLPT for consultation and reasonably decided not to consult with other tribes. *Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-CLB, 2023 WL 1782343, at *21-*22 (D. Nev. Feb. 6, 2023). Plaintiffs elsewhere in their Complaint even admit that BLM "identified . . . the Summit Lake Paiute Tribe . . . as Tribes needing to be consulted . . . ." Compl. ¶ 63. Despite SLPT's assertion otherwise, there can be no dispute that SLPT was reasonably identified for consultation on the Thacker Pass Project.

Turning to SLPT's criticism of BLM's consultation efforts, SLPT's allegations taken alongside publicly available information demonstrate that SLPT's claim must be dismissed.

---

[16] Plaintiffs' second and third assertions merge in that determining whether historic properties were reasonably identified largely turns on whether tribes were properly consulted.

On its face, SLPT's relevant allegations—that is, those specific to BLM's consultation efforts prior to issuance of the ROD on January 15, 2021—are slim at best.  SLPT alleges that BLM identified SLPT for consultation but "did not discuss the Project with SLPT before issuing the ROD."  Compl. ¶ 63.  SLPT also alleges BLM sent letters to the Nevada SHPO in 2019 and 2020 concerning BLM's identification of historic properties.  Compl. ¶ 69.  Those letters accurately disclosed that, at that point, no tribe had identified any places of cultural or religious importance or traditional cultural properties within the project area.  Pls.' App. Vol. 2, Ex. 14 at 6, 9, 11, ECF No. 3.  The Nevada SHPO responded, acknowledging receipt and requesting further steps be taken if such properties are ultimately identified.  Compl. ¶ 70; Pls.' App. Vol. 2, Ex. 15 at 3, ECF No. 3.  Plaintiffs also reference BLM's August 28, 2020 letter to the Nevada SHPO transmitting a draft MOA and the HPTP, which again, accurately disclosed that no such properties had yet been identified and that the HPTP would be provided to the tribes to assist in consultation.  Compl. ¶ 72; Pls.' App. Vol. 2, Ex. 14 at 10, ECF No. 3.  Plaintiffs then present allegations related not to BLM's consultation efforts with the tribes identified for consultation, which Plaintiffs put at issue here, but concerning the relationships and operations among BLM, the Nevada SHPO, and the Advisory Council on Historic Preservation.  Compl. ¶¶ 71-74.  The overwhelming majority of Plaintiffs' remaining allegations relate to post-review discovery consultation well after issuance of the ROD.  But *none* of these allegations illustrate a plausible claim to relief.  For example and for illustrative purposes only, Plaintiffs do not—and cannot—allege that SLPT failed to receive BLM's correspondence and BLM was aware of such failure; that SLPT responded to BLM's correspondence, requested engagement, but such request was ignored or rebuffed; or that SLPT in any other way indicated to BLM—either before or after BLM's repeated efforts to engage SLPT—that SLPT wished to consult on the Project and BLM did not reasonably afford it that opportunity.

Moreover, the Court need not rely on Plaintiffs' allegations alone in ruling on a 12(b)(6) motion to dismiss.  The Court may "'take judicial notice of matters of public record

outside the pleadings' and consider them for purposes of the motion to dismiss." *Mir*, 844 F.2d at 649 (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)) (noting that such material includes filings and records in other judicial proceedings).

As the Court has recognized and as is clear from the record in *Bartell Ranch*, BLM's identification and consultation efforts concerning SLPT are well-documented. BLM reached out to SLPT as early as 2005 when developing an ethnography in connection with preparation of the Winnemucca Resource Management Plan, which was ultimately approved in 2015.[17] SLPT indicated that it planned to attend a May 26, 2005 meeting in Reno, but no representative from SLPT attended, and SLPT never responded to letters or follow-up telephone calls. When in 2014, BLM attempted to consult with SLPT before approving the Kings Valley Clay Project, the Tribe indicated that it "felt the project was outside their immediate area of interest and wanted to use their time and resources to comment on projects closer to their reservations."[18] Ultimately, as the Court has already acknowledged, no Tribe "identified the Thacker Pass area as either sacred or a massacre site," in connection with BLM's review of the Kings Valley Clay Project, or in connection with four other "projects implicating the Project area" between 2010 and 2017, or at any time before the ROD for the Thacker Pass Project issued in January 2021. *Bartell Ranch*, 2023 WL 1782343, at *20-21. Based on this history and the disinterest in the area expressed and demonstrated by SLPT, the Court has observed that "[t]his could have been a reasonable basis for BLM not to consult with SLPT on the Project." Order at 9, ECF No. 32.

Nonetheless, BLM identified SLPT for consultation and the public record reflects that BLM attempted to consult with SLPT on the Project. BLM attempted to initiate formal consultation with SLPT via a December 12, 2019 letter, requesting the Tribe's assistance in "identifying the cultural values, religious beliefs, sacred places, and traditional practices of Native American people which could be affected by [BLM] actions on public lands, and

---

[17] Winnemucca Field Office RMP, Ethnographic Assessment at 88, ECF No. 26-1.
[18] West Lithium Kings Valley Clay Mine Environmental Assessment at 84, ECF No. 26-2.

where feasible to seek opinions and agreement on measures to protect those tribal interests."[19]   Shortly thereafter, BLM formally initiated the required public NHPA consultation process.[20]   BLM then hosted public scoping meetings on February 5, 2020 in Winnemucca, Nevada and on February 6, 2020, in Orovada, Nevada.[21]   SLPT did not attend.[22]

Despite having not received any response from SLPT, BLM continued its outreach. BLM forwarded the Draft Environmental Impact Statement ("DEIS") to SLPT on July 29, 2020, and again requested the Tribe's assistance.[23]   That same day, BLM published its public notice of availability of the DEIS requesting tribal participation.[24]   The DEIS allowed for virtual public meetings and those meetings were held on August 19 and 20, 2020.[25]   Once more, SLPT did not attend.[26]

Next, on August 28, 2020, BLM again reached out to SLPT seeking to engage in consultation and inviting SLPT to submit their comments and discuss any issues involving the Project.[27]   BLM's letter informed SLPT of BLM's efforts to identify cultural resources directly or indirectly affected by the Project and included the draft MOA and HPTP.  BLM invited SLPT to be a concurring party to the MOA, but SLPT never responded or signed

---

[19] Dec. 12, 2019 letter from BLM to SLPT, ECF No. 26-3; *see also Bartell Ranch* Administrative Record TPNHPA-0011, AR-000378-80.

[20] *See* Notice of Intent to Prepare a Draft Environmental Impact Statement and Resource Management Plan Amendment, for the Lithium Nevada Corp., Thacker Pass Project Proposed Plan of Operations and Reclamation Plan Permit Application, Humboldt County, Nevada, 85 Fed. Reg. 3413-02, 2020 WL 279646 (Jan. 21, 2020).

[21] Thacker Pass Scoping Report (Excerpt) at 3, ECF 26-4.

[22] *Bartell Ranch* Administrative Record TPEIS-0124.

[23] July 29, 2020 letter from BLM to SLPT, ECF No. 26-6

[24] *See* Notice of Availability of the Draft Environmental Impact Statement, 85 Fed. Reg. 45651-01, 2020 WL 4340040 (July 29, 2020).

[25] DEIS Excerpt at 6-2, ECF No. 26-7; FEIS Excerpt at 6-22, ECF No. 26-8.

[26] *Bartell Ranch* Administrative Record TPEIS-0730.

[27] August 28, 2020 letter from BLM to SLPT, ECF No. 26-12.

the MOA.

Finally, BLM reached out to SLPT again on November 30, 2020, forwarding the FEIS and again seeking the same assistance.[28]  SLPT never responded.

Plaintiffs concede that BLM sent SLPT at least three letters attempting to initiate consultation on or about December 12, 2019; July 29, 2020; and August 28, 2020.  *See* Order at 8, ECF No. 32.  Moreover, the Court may take judicial notice of the history of BLM's attempts to engage in consultation with SLPT outlined above as all of those records are in the *Bartell Ranch* administrative record.  *See, e.g.*, *California Sportfishing Prot. All. v. Shiloh Group, LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) (recognizing that courts may take judicial notice of the existence of documents within administrative records).

With BLM's efforts to consult well-established, Plaintiffs provide no allegations that SLPT ever responded to these efforts until after the ROD issued.  There are no allegations that SLPT requested more time for consultation, sought alternative means of communication, or in any way notified BLM that further consultation was warranted. Simply put, there are no allegations that SLPT "actively sought to consult with [BLM] and was not afforded the opportunity." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 33 (D.D.C. 2016) (quoting *Wilderness Soc'y v. Bureau of Land Management*, 526 F. App'x 790, 793 (9th Cir. 2013)).  Rather, the facts are clear that BLM made multiple attempts to engage in consultation and SLPT never accepted this invitation until after issuance of the ROD.  Such factual predicates, without more, simply cannot establish a viable NHPA claim for lack of consultation.  *See, e.g. Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of the Interior*, 608 F.3d 592, 609-610 (9th Cir. 2010) (holding that given the prior history of consultation and BLM's attempts to engage the tribe, BLM did not violate its obligation to consult under the NHPA); *Quechan Tribe of Ft. Yuma Indian Reservation v. U.S. Dep't of the Interior*, 927 F. Supp. 2d 921, 930-33 (S.D. Cal. 2013) (concluding the BLM satisfied its Section 106 consultation obligations by making "numerous attempts starting in 2010 and

---

[28] November 30, 2020 letter from BLM to SLPT, ECF 26-9.

then in 2011 to engage in government to government consultation" and meeting with the tribe once the tribe sought such involvement), *aff'd*, 673 F. App'x 709 (9th Cir. 2016).

In sum, BLM's record of consultation efforts—and the failure on the part of Plaintiffs to allege any additional facts that would indicate those efforts were unreasonable—precludes SLPT from obtaining relief on its NHPA consultation claim. "BLM's attempts to consult with SLPT were reasonable given the circumstances." Order at 10, ECF No. 32.

## IV.   Plaintiffs' NEPA claim fails to allege facts necessary to show supplemental environmental analysis is required.

Plaintiffs challenge the fact that BLM has not supplemented the Environmental Impact Statement for the Thacker Pass Project, despite—they allege—"significant new circumstances and information relevant to environmental concerns and bearing on the Project."[29] But an agency "need not supplement an EIS every time new information comes to light after the EIS is finalized." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 374 (1989). It only need do so "[i]f there remains 'major Federal actio[n]' to occur . . . ," *id.* at 374 (second alteration in original) (quoting 42 U.S.C. § 4332(2)(C)), *and* "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Norton v. S. Utah Wilderness Alliance*, 542 U.S 55, 72 (2004) (alteration in original) (quoting 40 C.F.R. § 1502.9(c)(1)(ii) (2003)).[30] Whether new circumstances or information is "significant" is soundly within the agency's area of expertise. *See Habitat Educ. Ctr., Inc. v. U.S. Forest Serv.*, 673 F.3d 518, 528 (7th Cir. 2012) (citing *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1215 (9th Cir. 1998)); *see also Marsh*, 490 U.S. at 377 (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)) ("Because analysis of the relevant documents 'requires a high level of technical expertise,' we must defer to 'the informed discretion of the responsible federal agencies.'").

---

[29] Compl. ¶ 157.

[30] For the current regulation cited by the Supreme Court in *Southern Utah Wilderness Alliance*, see 40 C.F.R. § 1502.9(d)(1)(ii) (2022).

**Fed. Defs.' Mot. to Dismiss**                                                                                          15

A "major Federal action" is "an activity or decision subject to Federal control and responsibility" but does not include "[a]ctivities or decisions that do not result in final agency action under the [APA]."  40 C.F.R. § 1508.1(q)(iii).  For a major Federal action to remain, there must be a "still pending decisionmaking process."  *Marsh*, 490 U.S. at 374.  Plaintiffs have not alleged that any "major federal action" remained to occur with respect to the Thacker Pass Project after the ROD issued on January 15, 2021.  Nor can they, because approval of that project constituted the last "major Federal action" to occur before mining operations could begin.  *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1095 (9th Cir. 2013) (quoting *Norton*, 542 U.S. at 73) (recognizing that when the plan of operations was approved, "appropriate NEPA review took place and '[t]here is no ongoing "major Federal action" that could require supplementation'" (alteration in original)); *see also Cold Mountain v. Garber*, 375 F.3d 884, 894 (9th Cir. 2004).

Even if Plaintiffs had alleged that a "major Federal action" remained, they have not identified any "significant" new circumstances or information to warrant supplementation given the thorough analysis of the EIS.  Viewing Plaintiffs allegations in the most favorable light, Plaintiffs allege the following warrant a supplemental EIS: (1) the discovery of the September 12, 1865 massacre site; (2) BLM's acknowledgment of Plaintiffs' proposal for the creation of the Thacker Pass Traditional Cultural District; and (3) BLM's alleged failure to consult with SLPT.  Compl. ¶ 145.  None of these allegations, however, meet the threshold for requiring a supplemental EIS.  As the Court is well aware, the 1865 massacre occurred outside the Project's APE.  Order at 3, ECF No. 32; *Bartell Ranch*, Order at 14, ECF No. 92.  Although the site of this event presents an important new discovery, BLM thoroughly considered the Project's impact on areas indirectly affected and took those concerns into account.[31]  The proposed Thacker Pass Traditional Cultural District meanwhile covers areas both inside and outside the Projects' APE and to the extent cultural resources constituting the cultural district are within the APE, those resources were considered in detail in extensive

---

[31] FEIS Excerpt at 4-83, ECF No. 26-8; MOA, Pls.' App. Vol. 2, Ex. 35 at 7, ECF No. 3.

Project surveys.[32]  Moreover, BLM's analysis of the 1865 massacre site and the cultural district remains on-going.  Finally, as discussed herein, BLM satisfied its consultation obligations with respect to SLPT and continues to engage in post-discovery consultation. The alleged failure to consult on the part of BLM is not *significant new circumstances or information*, but merely a flawed legal conclusion recast as an alleged factual development. It is clear from the Project record that BLM identified SLPT for consultation and reasonably attempted to engage in consultation, as described in Part III above.

Accordingly, Plaintiffs have not pleaded a claim for relief under NEPA and that claim should be dismissed.

## V.  Plaintiffs' FLPMA claim fails to allege facts plausibly entitling Plaintiffs to relief.

Finally, the Court should dismiss Plaintiffs' FLPMA claim (Compl. ¶¶ 148–49). Plaintiffs contend that the Thacker Pass Project's approval "terminated" two existing approved plans of operations and two existing authorized exploration notices[33] filed by Lithium Nevada under 43 C.F.R. subpart 3809, and that any work conducted under these authorizations and notices after the ROD issued violated FLPMA's requirement that BLM act "to prevent unnecessary or undue degradation of the lands," 43 U.S.C. § 1732(b).  *See* Compl. ¶¶ 2, 32-42.  The Court should dismiss this claim because Plaintiffs have not stated a cognizable legal claim.

As the Court has already acknowledged, Plaintiffs' FLPMA claim "appears to be based on a misunderstanding of the way BLM's permitting process works" and a misinterpretation of one sentence in the Project's ROD. Order at 13, ECF No. 32. Specifically, Plaintiffs' FLPMA claim relies on § 2.2.6 of the Mining Plan of Operations, which describes prior disturbances in the Project Area under the Prior Authorizations, and

---

[32] FEIS Excerpt at 4-82, ECF No. 26-8.

[33] The Kings Valley Clay Mine Plan of Operations (approved 2014), the Kings Valley Lithium Exploration Project Plan of Operations (approved 2010) (together, the "Kings Valley Approvals"), the Quinn River Valley Test Wells Notice of Intent (filed 2017), and the Far East Notice of Intent (filed 2017) (all four collectively, and without conceding that the notices are "authorizations," the "Prior Authorizations").

then provides:

> LNC intends to incorporate all existing disturbance into this Project. Authorization of this [Plan of Operations] and Plan will terminate the [Kings Valley Clay Mine Plan of Operations] (N91547), Kings Valley Lithium Exploration Project (N85255), the Quinn River Valley Test Wells [Notice of Intent] (N94510), the Far East [Notice of Intent] (N95396) *and all reclamation requirements*.[34]

Plaintiffs contend that this provision terminated the Prior Authorizations entirely, such that any subsequent work under them was unauthorized.  As an initial matter, Plaintiffs identify no provision in the applicable regulations that support their contention; indeed, approval of a subsequent plan of operations covering the same or similar lands is not among the ways specified in the applicable regulations for why prior authorizations may be terminated.  *See* 43 C.F.R §§ 3809.332 (stating that a notice "remains in effect for 2 years, unless extended under § 3809.333, or unless you notify BLM beforehand that operations have ceased and reclamation is complete"), 3809.423 ("Your plan of operations remains in effect as long as you are conducting operations, unless BLM suspends or revokes your plan of operations for failure to comply with this subpart."); *Ctr. for Biological Diversity*, 706 F.3d at 1091-94 (affirming BLM's interpretation that a plan of operations cannot become automatically ineffective, but rather remains in effect unless one of the actions described in § 3809.423 is taken).

Moreover, as BLM explained to Plaintiffs' counsel on September 15, 2022:

> Before the previous Plans of Operations (Plan) can be closed, the new Plan of Operations must be fully bonded to include the disturbance created and/or proposed under these old Plans. BLM does not close any authorized Plans unless the [Nevada Department of Environmental Protection] and the BLM agrees that they are fully reclaimed or the reclamation liability and financial guarantee is assumed by another entity or Plan.[35]

---

[34] Thacker Pass Project Proposed Plan of Operations and Reclamation Plan Permit Application Excerpt at 4, ECF No. 26-8 (emphasis added). Section 2.4 of the same document likewise acknowledges that Lithium Nevada conducted exploration activities under the Prior Authorizations and includes the same incorporation and termination language. *Id.* at 21.

[35] Sept. 2022 email exchange between BLM and Mr. Falk, Pls.' App. Vol. 2, Ex. 28 at 4, ECF No. 3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In other words, the Prior Authorizations and "all reclamation requirements" under them would be terminated only after the reclamation liability and financial guarantee for those authorizations were folded into the Thacker Pass Project and reclamation financial guarantee. It is undisputed that no financial guarantee had been received and accepted when the Thacker Pass ROD was signed in January 2021; the Project was not bonded until February 23, 2023. And in the absence of this stated condition precedent—*i.e.*, the Thacker Pass Project being "fully bonded"—it necessarily follows that the reclamation liability from the Prior Authorizations could not, as a factual matter, at the time of the ROD have been folded into the new reclamation financial guarantee, and the Prior Authorizations could not have been closed.  Plaintiffs thus cannot demonstrate that BLM failed to comply with the terms of the Thacker Pass Project or allowed unnecessary or undue degradation, and this claim should be dismissed.

To the extent Plaintiffs contend that authorization of new work under the Prior Authorizations violated the NHPA because BLM permitted such new work "[w]ithout concluding the post-review discovery process or initiating the same process for the [Prior Authorizations]," (Compl. ¶ 2), BLM's ongoing post-review discovery process addresses both the Thacker Pass Project and the Prior Authorizations, and as noted above, such a claim must be dismissed because it is not ripe.  *See, e.g.*, *Yankton Sioux Tribe v. U.S. Army Corps of Eng'rs*, 194 F. Supp. 2d 977, 991 (D. S.D. 2002) (concluding NHPA claims were not ripe where consultation between the government and the tribe was ongoing).

Finally, to the extent Plaintiffs purport to challenge the Prior Authorizations, or the sufficiency of consultation efforts preceding them, such a challenge is barred. Any challenge to the Kings Valley Approvals is time-barred because those projects were approved between 2010 and 2014—more than six years before Plaintiffs filed their complaint. *See* 28 U.S.C. § 2501 (6-year statute of limitations). The Court lacks subject-matter jurisdiction over any challenge to the exploration notices because they are not *agency* actions at all. *See* 43 C.F.R. §§ 3809.21, 3809.11(a), 3809.312 (allowing "exploration causing surface disturbance of

5 acres or less of public lands" to commence upon notice and submission of a satisfactory financial guarantee, and without approval of a plan of operations or BLM approval).

## **CONCLUSION**

The Court lacks subject matter jurisdiction to consider Plaintiffs' breach of contract and post-review discovery NHPA claims.  Even accepting Plaintiffs' allegations as true, their remaining NHPA claim, NEPA claim, and FLPMA claim all fail to set forth a set of facts that could plausibly entitle Plaintiffs to relief.  Accordingly, for the reasons stated herein, the Court should dismiss Plaintiffs' claims in their entirety.

Respectfully submitted this 22nd day of May 2023.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Div.

 */s/ Michael K. Robertson*
ARWYN CARROLL (MA Bar 675926)
MICHAEL K. ROBERTSON (DC Bar 1017183)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  202-305-0465
Fax:  202-305-0275
arwyn.carroll@usdoj.gov
michael.robertson@usdoj.gov

*Attorneys for Federal Defendants*

## Certificate of Service

I certify that on May 22, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Michael K. Robertson*