1

2 TODD KIM
Assistant Attorney General
3 Environment and Natural Resources Division
United States Department of Justice

4 MICHAEL ROBERTSON (DC Bar 1017183)
Natural Resources Section
5 P.O. Box 7611
Washington, D.C. 20044-7611
6 Phone: (202) 305-0465
Fax: (202) 305-0275
7 michael.robertson@usdoj.gov

8 *Attorneys for Federal Defendants*

9                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
10

11 | RENO-SPARKS INDIAN COLONY, *et al.*, | Case No. 3:23-cv-70-MMD-CLB |
12

                    Plaintiffs,                **FEDERAL DEFENDANTS' REPLY**
13                                              **IN SUPPORT OF MOTION TO**
           v.                                   **DISMISS THE COMPLAINT**
14

15 DEBRA HAALAND, Secretary of the
Interior, *et al.*,
16
                    Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

Fed. Defs.' Reply in Supp. of Mot. to Dismiss

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| APA | Administrative Procedure Act |
| APE | Area of Potential Effects |
| BLM | Bureau of Land Management |
| BPT | Burns Paiute Tribe |
| DEIS | Draft Environmental Impact Statement |
| EIS | Environmental Impact Statement |
| FEIS | Final Environmental Impact Statement |
| FLPMA | Federal Land Policy and Management Act |
| HPTP | Historic Properties Treatment Plan |
| MOA | Memorandum of Agreement |
| NEPA | National Environmental Policy Act |
| NHPA | National Historic Preservation Act |
| ROD | Record of Decision |
| RSIC | Reno-Sparks Indian Colony |
| SHPO | State Historic Preservation Officer |
| SLPT | Summit Lake Paiute Tribe |

A complaint must be dismissed when a plaintiff fails to allege facts sufficient for a federal court to exercise subject matter jurisdiction or fails to allege facts sufficient to state a claim to relief that is plausible on its face. *See* Fed. R. Civ. P. 12(b). That is the case here for the reasons explained in Defendants' Motion to Dismiss, and none of the arguments in Plaintiffs' Response brief provide any basis for reaching a different result. Accordingly, Plaintiffs' claims must be dismissed in their entirety.

## ARGUMENT

### I. SLPT's breach of contract claim is not statutorily-based and is therefore barred.

Any plaintiff bringing a claim against the United States must first establish a waiver of the United States' sovereign immunity. *See Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998). Neither in its Complaint nor in its Response does SLPT establish such a waiver to maintain its breach of contract claim.

Defendant the Bureau of Land Management ("BLM") entered into a Memorandum of Agreement ("MOA") with the Nevada State Historic Preservation Officer ("SHPO") regarding the Thacker Pass Project. SLPT alleges BLM breached the MOA "by failing to initiate the MOA's dispute resolution process . . . ." Compl. ¶ 155, ECF No. 1. The Complaint goes on to seek "[a] judgment and order ordering BLM to specifically perform the terms and conditions of the MOA." *Id.* ¶ 163. Presumably, SLPT contends that this breach of contract claim may be brought pursuant to the APA's limited waiver of sovereign immunity in 5 U.S.C. § 702. But this is a quintessential contract claim, and thus does not fall under the APA's waiver of sovereign immunity. *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 931 (9th Cir. 2009).

To circumvent this threshold bar, SLPT appears to assert that its breach of contract claim is statutorily-based. In support, however, SLPT notes only that elsewhere in its Complaint it cites 36 C.F.R. § 800.6(c)—the provision authorizing agency use of a memorandum of agreement—and that "BLM entered into the MOA to satisfy its NHPA requirements." *See* Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") 23, ECF No. 39.

The argument fails because the mere fact that the Section 106 regulations provide for a memorandum of agreement does not render SLPT's claim "statutorily-based" such that it can evade the United States' sovereign immunity.  SLPT seeks relief in the form of participation in a dispute resolution process.  That dispute resolution process[1] is found solely within the MOA.  Thus, participation by "any signatory or concurring party"[2]—and SLPT is neither—is grounded not in any statute, but in contract.

Finally, SLPT's contract claim would fail as a matter of law even if the Court were to find an applicable waiver of sovereign immunity, because SLPT concedes that it lacks standing to bring suit under the MOA as either a signatory or concurring party.  For all of these reasons, SLPT's claim should be dismissed.

SLPT also presents a contingency argument; in the event of dismissal, SLPT asks that it be granted leave to amend its Complaint to assert an unspecified claim based on a previously unalleged theory that it is a third-party beneficiary of the MOA.  Pls.' Resp. 23. But that contingency request is not properly before the Court, because SLPT has not moved to amend its Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Rule 7-2.  But even if such a motion were before the Court, it would have to be denied as futile.  *See, e.g.*, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").  Purporting to enforce the MOA against the United States on a third-party beneficiary theory would still seek the same contractually-based equitable relief, which falls outside the APA's limited waiver of sovereign immunity.

**II. Plaintiffs' NHPA claim challenging the post-review discovery process is unripe.**

Plaintiffs make several arguments concerning their post-review discovery process NHPA claim.  At the center of all those arguments, however, is the erroneous presumption that "BLM was obligated . . . [to] complet[e] the Section 106 post-review discovery process

---

[1] MOA, Pls.' App. Vol. 2, Ex. 35, 5, ECF No. 3.

[2] *Id.*

before allowing any destructive activities . . . in Thacker Pass to proceed."  Pls.' Resp. 16.

For example, Plaintiffs allege that after issuance of the ROD and subsequently learning of the 1865 massacre site, BLM failed "to make reasonable efforts to avoid, minimize, or mitigate adverse effects to the historic properties subject to the post-review discovery consultation process" in violation of the NHPA.  Compl. ¶ 153.  As Federal Defendants explained in their Motion to Dismiss—and Plaintiffs do not dispute—this post-review discovery process remains on-going.  To avoid the necessary conclusion that their NHPA claim is therefore unripe, Plaintiffs put forth two competing theories to support their contention that BLM was required to conclude the post-review discovery consultation process before allowing any further activities, neither of which have merit.

First, Plaintiffs argue that their NHPA claim is ripe because it is in fact a claim to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see* Pls.' Resp. 6; *see also*, Compl. ¶ 1 (challenging BLM's alleged "actions and failures to act").  But in order to bring a "failure to act" claim under the APA, a plaintiff must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 64 (2004).  An agency action is legally required where, "the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus."  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing *SUWA*, 542 U.S. at 63).

Plaintiffs contend that, here, the agency action BLM was required to take was to "complet[e] the post-review discovery process . . . before allowing mine construction. . . ." Pls.' Resp. 7.  But Plaintiffs cite no authority under 36 C.F.R. § 800.13—or any other statute, regulation, or authority—that would ***require*** BLM to stop LNC from conducting construction activities under all validly issued permits or authorizations while the post-review discovery process proceeds.  Section 800.13(b)(1) provides that, in the event historic properties are discovered or unanticipated effects on historic properties are found after completion of the Section 106 process but prior to construction, the agency must make

reasonable efforts to avoid, minimize, or mitigate adverse effects and "consult to resolve adverse effects pursuant to § 800.6."[3]  But, nothing in § 800.6 or § 800.13 requires BLM to force an operator to stop all authorized construction activities while post-review discovery consultation progresses.[4]

The fundamental flaw in Plaintiffs' argument is that it conflates the post-review discovery process under § 800.13(b)(1) with what is required under Section 106 and 36 C.F.R. §§ 800.1-800.16 as a whole.  *E.g.* Pls.' Resp. 8 ("So, BLM has an ongoing obligation to undertake additional Section 106 analysis for all of Lithium Nevada's projects in Thacker Pass.").  But the entire Section 106 process is not at issue.  By its very terms, § 800.13(b)(1) applies only "after the agency official has completed the section 106 process."[5]  Plaintiffs reliance on arguments going to the Section 106 process as a whole are thus of no merit.  In sum, Plaintiffs simply fail to allege any discrete, legally required agency action necessary to sustain their failure-to-act APA claim.

Second, as an alternative theory, Plaintiffs argue that BLM ***did*** take final agency action in the form of a BLM "decision not to finish the post-review discovery process

---

[3] The BLM-SHPO State Protocol Agreement, ECF No. 26-18, replaced the procedures in §§ 800.3-800.7, but it did not replace § 800.13(b)(1) which explicitly relies on § 800.6.

[4] While § 800.6(c)(6) envisions language within a memorandum of agreement "to deal with the subsequent discovery or identification of additional historic properties," the MOA here defers to the HPTP, which in turn is inapplicable, as it only addresses unanticipated archaeological resources encountered during construction.  *See* MOA, Pls.'s App. Vol. 2, Ex. 35, 6, ECF No. 3; Hall Decl. Ex. A (HPTP) at 49, ECF No. 26-11.  It is for this reason that BLM, as endorsed by the ACHP, turned to the process under § 800.13(b)(1): "The post-review discovery plan appended to the [MOU] was limited to archaeological resources and required no consultation to evaluate these properties and resolve adverse effects.  For this reason, the BLM instead opted to follow the process under 36 CFR § 800.13(b)(1) to evaluate the massacre site as a potential historic property."  Feb. 27, 2023 Letter from ACHP to BLM, Ex. 17 at 2, ECF No. 26-17.

[5] To avoid any confusion, it is also worth noting that the 2014 Protocol is not a "programmatic agreement" under § 800.13(a)(1).  Section 800.13(a)(1) refers to a programmatic agreement for an ***undertaking***.  The 2014 Protocol, however, falls under § 800.14(b) as a step-down agreement that describes how BLM and the Nevada SHPO will implement the National Programmatic Agreement.

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                                4

before authorizing LNC" to commence construction activities.  Putting aside that Plaintiffs fail to allege any facts demonstrating BLM ever issued such a "decision" and that the ROD authorizing construction activities issued prior to the post-review discovery, Plaintiffs' allegations do not establish a final agency action.

For an agency action to constitute "final agency action" reviewable under the APA, two conditions must be satisfied.  "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature."  *Bennet v. Spear*, 520 U.S. 154, 177-178 (1997) (internal citation omitted).  "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Id*. at 178 (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

Here, there is no question the post-review discovery process is on-going and has not reached the "consummation" of BLM's decision-making process.  Moreover, BLM has not made any determination of "rights or obligations" as a result of that process.  To the extent LNC's activities demonstrate "legal consequences," those flow not from the § 800.13(b)(1) post-review discovery process, but from the issuance and approval of the Thacker Pass ROD and Plan of Operations.  And again, Plaintiffs rely not on language found within the post-review discovery process provisions to demonstrate that a final agency action has been reached, but erroneously point to other provisions of Part 800 to claim that BLM was required to order LNC to stop construction activities under its approved plan of operations until the post-review discovery process was complete.

Turning to an argument found elsewhere in Plaintiffs' Response, Plaintiffs argue that after discovery of the 1865 massacre site, § 800.13 obligated BLM to also conduct a separate post-review discovery consultation process with the Tribes for work that was performed under Prior Authorizations[6] such as the 2009 Kings Valley Lithium Exploration

---

[6] *See* Defs.' Mot. to Dismiss, 17 n.33, ECF No. 36, identifying the four plans of operations and notices of intent that make up the contested "Prior Authorizations."

Project plan of operations.  Pls.' Resp. 13-16; *id*. at 14 ("BLM was obligated to conduct a post-review discovery process for the older permits.").  This argument has no merit.  As an initial matter, the current post-review discovery process necessarily addresses both the Thacker Pass Project and the Prior Authorizations.  *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. ("Defs.' Resp.), 24, 29-31, ECF No. 26.  Any separate § 800.13(b)(1) process for the Prior Authorizations would be redundant.  Moreover, even if BLM had initiated a separate § 800.13(b)(1) process, once the reclamation liability and financial guarantees for the Prior Authorizations were folded into the Thacker Pass Project, the Prior Authorizations can be terminated, at which point there will no longer be an "undertaking," 54 U.S.C. § 300320, to which § 800.13 post-review discovery consultation could attach.

In sum, Plaintiffs fail to allege the existence of a final agency action reviewable under the APA.  Thus, at best, their post-review discovery process NHPA claim is unripe.  Plaintiffs otherwise present only conclusory allegations that BLM was required to complete the § 800.13(b)(1) post-review discovery consultation process before LNC could proceed with any activities under the approved plan of operations, and those allegations find no support in the relevant statute or regulations.  Such sparse allegations cannot survive a Rule 12(b) motion to dismiss.

**III. Summit Lake Paiute Tribe's NHPA claim is fatally deficient.**

SLPT's independent NHPA claim alleges that BLM failed reasonably and in good faith to engage in consultation efforts and identify historic properties.  Pls.' Resp. 20-21.[7]  SLPT largely does not contest the history of BLM's consultation and identification efforts presented in Defendants' Motion to Dismiss.  Rather, SLPT puts forth two peripheral arguments, neither of which have merit.

As to their consultation argument, Plaintiffs imply—without ever alleging—that

---

[7] Plaintiffs also continue to assert that "BLM failed to make a reasonable and good faith effort . . . to identify Indian tribes to consult with before issuing the ROD."  Pls.' Resp. 21.  But other than this conclusory assertion Plaintiffs provide no argument in support and apparently concede this argument is without merit.

SLPT did not receive BLM's December 12, 2019, July 29, 2020, and August 28, 2020 consultation letters. *Id.* But speculation on the part of counsel does not constitute "well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At minimum, SLPT through counsel, was well-aware of the existence of these communications as they were included in the *Bartell Ranch* administrative record. And yet, as the Court has pointed out, Plaintiffs failed to allege in their Complaint that they did not receive these consultation letters. Order 8, ECF No. 32. Beyond presenting unpled speculation, "SLPT does not specifically address any of the evidence of consultation BLM proffered." *Id.* Accordingly, no reasonable inference can be drawn that BLM failed reasonably and in good faith to engage SLPT in consultation. *See Iqbal*, 556 U.S. at 678.

Next, SLPT fails to demonstrate that BLM's efforts to identify historic properties were unreasonable and not in good faith. BLM's obligations for identifying historic properties are outlined in Section V.A. of the Protocol, including the applicable inventory standards used for identification and the need for consultation "[w]hen Indian tribes identify properties of religious and cultural importance."[8] Consistent with the Protocol, the ACHP regulations require BLM, "in consultation with the SHPO . . . to identify historic properties within the area of potential effects." 36 C.F.R. § 800.4(b). SLPT at no point argues that BLM failed to conduct a Class III inventory where appropriate or take other steps prescribed in Section V.A.

Instead, SLPT accuses BLM of withholding information from the SHPO and misrepresenting information to the SHPO. Pls.' Resp. 21. SLPT argues this supposedly demonstrates BLM's "pre-ROD" identification of historic properties was made in bad faith. *Id.* In support, SLPT continues to rely on *Pueblo of Sandia v. United States*, 50 F.3d 856 (10th Cir. 1995), but that case is inapposite for the reasons previously identified by

---

[8] Protocol, 16-18, ECF No. 26-18.

Defendants.[9]  SLPT also refers to unspecified "materials attached by the Tribes to their Complaint" in which "SHPO stated numerous times that BLM withheld information . . . ." *Id.*  BLM objects to Plaintiffs' mischaracterizations, but regardless, ***all*** the correspondence identified by Plaintiffs allegedly indicating BLM withheld information from the SHPO are dated ***after*** issuance of the ROD on January 15, 2021.  At best, such allegations pertain to Plaintiffs' unripe post-review discovery claim, but are irrelevant to whether BLM reasonably identified historic properties during the Section 106 process ***prior*** to issuance of the ROD.

Similarly, the only "pre-ROD" alleged misrepresentations SLPT identifies are in a series of letters from BLM to the SHPO on December 16, 2019, January 23, 2020, and August 28, 2020.[10]  In the December and January letters, BLM stated, among other things, that "Tribal consultation . . . began in 2017 and is ongoing for the current undertaking;" and that as of the date of the letter, "no questions, comments or issues have been raised and no sacred sites, places of cultural and religious importance, or traditional cultural properties have been identified within the project area by any tribe."[11]  In the August 28 letter, BLM also noted that "BLM has met with tribes to discuss the project and has provided information and requested information from the tribes on several occasions . . . ."[12]  These statements were accurate as evidenced by, among other things, the many consultation letters sent by BLM and the meetings conducted by BLM attended by various entities, including representatives of the Fort McDermitt Paiute Tribe.[13]

SLPT's allegations in support of its NHPA claim are almost entirely speculative and conclusory.  The facts in the record and to which the Court may take judicial notice, by

---

[9] Defs.' Resp. 19, ECF No. 26.

[10] Pls.' App. Vol. 2, Ex. 14 at 6, 9, 11, ECF No. 3

[11] *Id.* at 6, 9.

[12] *Id.* at 11.

[13] *See* Mot. to Dismiss 18-20; *Bartell Ranch* Administrative Record TPEIS-0124.

contrast, clearly demonstrate BLM's consultation and identification efforts were reasonable and made in good faith.  Accordingly, SLPT's NHPA claim must be dismissed.

**IV. Plaintiffs have not alleged a major Federal action to establish their NEPA claim.**

Plaintiffs allege that BLM violated NEPA by failing to prepare a Supplemental EIS. But an agency need only supplement an EIS when a "major Federal action[]" remains to occur and significant new circumstances or information arise.  *See SUWA*, 542 U.S. at 72; *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989).

Although not alleged in their Complaint, Plaintiffs identify two events they claim are "major Federal actions" that had yet to occur when BLM learned of the 1865 massacre site after issuance of the ROD in 2021: (1) issuance of permits pursuant to the Archaeological Resource Protection Act; and (2) adjudication of LNC's reclamation bond. Pls.' Resp. 23.  But neither event represents the type of outstanding discretionary decision-making process necessary to establish a remaining "major Federal action" for supplemental EIS purposes.  Rather, they constitute independent compliance and monitoring activities "taken to ensure the mine's continuing compliance with BLM regulations and applicable state and federal environmental laws."  *Ctr. for Biological Diversity v. Salazar*, 791 F. Supp. 2d 687, 697 (D. Ariz. 2011) (concluding that BLM requirements that mine operator secure a clean air act permit and update the reclamation bond before resuming operations were not major Federal actions), *aff'd* 706 F.3d 1085 (9th Cir. 2013) ("These additional, independent actions thus did not trigger NEPA supplementation . . . .").  Such activities are "'insufficient' to constitute major federal action."  *Id.* (quoting *Sierra Club v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988).

Plaintiffs conflate the question of whether LNC needed additional approvals or needed to take further administrative steps before it could conduct mining operations, with the question of whether BLM's decision to issue the ROD and approve the Plan of Operations was final and completed on January 15, 2021.  Only the latter inquiry is relevant for EIS supplementation purposes.  Once BLM issued the ROD and approved the

Plan of Operations, "there [was] no ongoing 'major Federal action' that could require supplementation." *Ctr. for Biological Diversity*, 791 F. Supp. 2d at 697 (quoting *SUWA*, 542 U.S. at 73).[14]  Plaintiffs' NEPA claim thus falls short of identifying a predicate major Federal action and must be dismissed.

**V. Plaintiffs' FLPMA claim is based on a misunderstanding of the law and the facts.**

Plaintiffs do not present any new arguments in their Response in support of their FLPMA claim.  Plaintiffs allege that work was performed in the Thacker Pass Project area pursuant to Prior Authorizations after the date of issuance and approval of the Thacker Pass ROD and Plan of Operations.  Plaintiffs continue to maintain that such work was unauthorized, and therefore unlawful under FLPMA, because the Plan of Operations provided that, once authorized, it "will terminate" the Prior Authorizations.  Resp. 13.

Plaintiffs insist that the phrase "will terminate" in the Plan of Operations can do more than its plain language will allow.  In essence, they insist that the Plan of Operations, once approved, ***immediately*** terminated all Prior Authorizations.  As Defendants explained in their Motion to Dismiss and as the Court previously observed, Plaintiffs' argument is premised on a basic misreading of the facts and the law.  Plaintiffs fail to identify any provision in the surface management regulations that would allow such immediate termination.  Moreover, Plaintiffs ignore the import of the language in the Plan of

---

[14] As to whether the discovery of the 1865 massacre site constitutes "significant new circumstances or information," Defendants maintain their position that although the discovery is both important and painful, given its relative location, it does not fall within the parameters necessary to warrant EIS supplementation even if a major Federal action were to remain.  Also, despite Plaintiffs' protestations, Defendants submit that their understanding of the location of the massacre site and their representations to the Court as such have been consistent.  Based on information provided to BLM, Defendants concluded that the massacre site occurred on privately-owned lands within the Project's *indirect* Area of Potential Effects ("APE")—that is, outside the defined area of *direct* Potential Effects that would be subject to physical disturbance.  To the extent Plaintiffs disagree with Defendants' assessment and contend that the massacre site includes a much larger area encompassing BLM lands and areas within the *direct* APE, this only underscores the need for the post-review discovery consultation process to be allowed to proceed and for such issues to be addressed in accordance with the steps outlined in BLM's February 23, 2023 letter to RSIC.  ECF No. 19-2.

Operations providing that its authorization "will terminate the [Prior Authorizations] **_and all reclamation requirements_**."[15]  Because the reclamation requirements cannot be folded into the Thacker Pass Project until the Thacker Pass Project is fully bonded—which did not occur until February 23, 2023—it would make little sense to interpret the Plan of Operations as having the immediate effect Plaintiffs contend.

In light of the plain language of the Plan of Operations and the lack of any support for their position in the surface management regulations, Plaintiffs' FLPMA claim must be dismissed.  *See Bank of Am., N.A. v. Woodcrest Homeowners Assoc.*, 381 F. Supp. 3d 1280, 1284 (D. Nev. 2019) (recognizing that when considering a Rule 12(b)(6) motion to dismiss, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## CONCLUSION

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  Here, all of Plaintiffs' claims are either barred on sovereign immunity or ripeness grounds, or simply fail to allege facts that could plausibly support a claim for relief.  Accordingly, Plaintiffs' Complaint must be dismissed.

Respectfully submitted this 20th day of June 2023.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Div.

 /s/ Michael K. Robertson
MICHAEL K. ROBERTSON (DC Bar 1017183)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  202-305-0465

---

[15] Thacker Pass Project Proposed Plan of Operations and Reclamation Plan Permit Application Excerpt at 4, ECF No. 26-8 (emphasis added).

Fax:  202-305-0275
michael.robertson@usdoj.gov

*Attorneys for Federal Defendants*

<u>Certificate of Service</u>

I certify that on June 20, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Michael K. Robertson*