UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RENO-SPARKS INDIAN COLONY, *et al.*,

                         Plaintiffs,

     v.

DEB HAALAND, *et al.*,

                         Defendants.

Case No. 3:23-cv-00070-MMD-CLB

ORDER

## I.    SUMMARY

Plaintiffs Reno-Sparks Indian Colony ("RSIC"), Burns Paiute Tribe ("BPT"), and Summit Lake Paiute Tribe ("SLPT") sued Defendants Deb Haaland, the current Secretary of the Interior, along with Anne-Marie Sharkey and Kathleen Rehberg, local officials of the Department of the Interior's Bureau of Land Management ("BLM") in their official capacities (collectively, the "Federal Defendants"), alleging violations of several federal laws through the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"), and seeking to block further construction of a lithium mine near Thacker Pass, Nevada (the "Project"). (ECF No. 1.) The Court granted the proponent of the Project, Lithium Nevada Corporation, leave to intervene as a defendant. (ECF No. 18.) The Court later denied Plaintiffs' motion for a temporary restraining order and preliminary injunction.[1] (ECF No. 32 ("PI Order").) Before the Court is Federal Defendants' motion to dismiss.[2] (ECF No. 36 ("Motion").) As further explained below, the Court will grant the Motion but *sua sponte* grant Plaintiffs leave to amend most of their claims.

---

[1]That decision remains on appeal as of the date of entry of this order. (ECF Nos. 34, 35, 37, 38.)

[2]Plaintiffs responded (ECF No. 39) and Federal Defendants replied (ECF No. 43). Lithium Nevada did not participate in the briefing process on the Motion.

1    **II.    BACKGROUND**

2        The Motion seeks dismissal of the same Complaint discussed in the PI Order, and

3    the background facts pertinent to the Motion are thus all the same (ECF No. 32 at 2-6),

4    though the legal standard governing the Court's review is, of course, different. The Court

5    also uses the same acronyms in this order that it did in the PI Order—including for the

6    pertinent statutes. But for clarity, references below to the MOA refer to the "Memorandum

7    of Agreement Between the United States Department of the Interior Bureau of Land

8    Management Winnemucca District Office and the Nevada State Historic Preservation

9    Officer Regarding the Lithium Nevada Thacker Pass Project Humboldt County[.]"

10   **III.    DISCUSSION**

11       The Court addresses Federal Defendants' arguments as to why Plaintiffs' claims

12   should be dismissed in the order Federal Defendants raised them in their Motion. Plaintiffs

13   only explicitly asked for leave to amend as to SLPT's breach of contract claim in a way

14   that does not comply with LR 15-1 (ECF No. 39 at 4, 23), and Federal Defendants do not

15   address whether dismissal of Plaintiffs' claims should be with or without prejudice (ECF

16   Nos. 36, 43), but the Court will nonetheless *sua sponte* evaluate whether to grant Plaintiffs

17   leave to amend as to each of their claims. Indeed, "[t]he court may *sua sponte* or on motion

18   change, dispense with, or waive any of these rules if the interests of justice so require."

19   LR IA 1-4. The interests of justice are better served by resolving cases on their merits, and

20   granting Plaintiffs leave to amend some of their claims would give the Court a better

21   chance of adjudicating the merits of this case. *See, e.g.*, *Thompson v. Hous. Auth. of City*

22   *of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (mentioning "the public policy favoring

23   disposition of cases on their merits"). Moreover, "[i]n exercising its discretion [as to whether

24   to grant leave to amend], 'a court must be guided by the underlying purpose of Rule 15—

25   to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD*

26   *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v.*

27   *Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Thus, the Court waives strict compliance with

28

1   LR 15-1, and will *sua sponte* grant Plaintiffs leave to amend some of their claims where

2   the Court cannot say that amendment would be futile.

3           **A.  Breach of Contract**

4           Federal Defendants first argue in pertinent part that SLPT's claim that BLM

5   breached the MOA is barred by the doctrine of sovereign immunity.[3] (ECF No. 36 at 14-

6   15.) SLPT responds that its breach of contract claim is statutorily based, and thus not

7   barred, alternatively requesting leave to amend under a third party beneficiary theory.

8   (ECF No. 39 at 23.) The Court agrees with Federal Defendants.

9           SLPT specifically argues its breach of contract claim is statutorily based because

10  SLPT cites 36 C.F.R. § 800.6(c) in the Complaint, which provides that an agency official

11  may comply with their section 106 (of the NHPA) consultation requirements by entering

12  into a memorandum of agreement and ensuring that the applicable undertaking is carried

13  out in accordance with it. (*Id.*; *see also* 36 C.F.R. § 800.6(c).) Thus, SLPT argues, its claim

14  that BLM breached the MOA by failing to initiate the dispute resolution process described

15  therein upon SLPT's request is statutorily based because BLM entered into the MOA to

16  comply with NHPA requirements. (ECF No. 39 at 23.) Federal Defendants do not dispute

17  that BLM entered into the MOA with the Nevada State Historic Preservation Officer

18  ("Nevada SHPO") regarding the Project, but insist that this does not mean SLPT's claim

19  is statutorily based because SLPT seeks specific performance of the MOA—forcing BLM's

20  participation in its dispute resolution process. (ECF No. 43 at 3; *see also id.* at 3-4.) Federal

21  Defendants accordingly argue SLPT's breach of contract claim is a contractually based

22  claim barred by the doctrine of sovereign immunity.

23          "[A] suit seeking specific performance of a contract is a 'contractually' based claim

24  for purposes of the APA[.]" *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 931

25  (9th Cir. 2009). And the "APA does not waive sovereign immunity for [a] contractually

26

27          [3]They raised the same argument in response to Plaintiffs' motion for a temporary
    restraining order and preliminary injunction, and the Court agreed with them. (ECF No. 32
28  at 7.)

based claim for equitable relief." *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994).

Despite SLPT's argument to the contrary, SLPT's breach of contract claim is a contractually based claim barred by the doctrine of sovereign immunity—because SLPT seeks specific performance of the MOA. (ECF No. 1 at 36 (alleging BLM breached the MOA by failing to initiate the dispute resolution process when SLPT invoked it), 38 (seeking a "judgment and order ordering BLM to specifically perform the terms and conditions of the MOA").) Indeed, SLPT does not argue otherwise in response to the Motion. (ECF No. 39 at 23.) SLPT instead asks for leave to amend without mentioning what it could plausibly allege it wants other than specific performance of the dispute resolution provision of the MOA. (*Id.*) This is particularly notable because the Court stated it lacks jurisdiction over this claim in the PI Order, giving Plaintiffs over two months to consider how they could perhaps move to amend this claim. (ECF No. 32 at 7; *see also* ECF No. 39 (responding to the Motion more than two months after the Court issued the PI Order).) In any event, SLPT's breach of contract claim is dismissed as barred by the doctrine of sovereign immunity. *See Park Place*, 563 F.3d at 931 (finding that the APA does not waive sovereign immunity for a contractually based claim for equitable relief). The dismissal is with prejudice, as amendment would be futile, because SLPT's claim would still be barred by sovereign immunity even if the Court permitted it to proceed on the unalleged third party beneficiary theory Plaintiffs allude to in response to the Motion— the only suggestion Plaintiffs make when it comes to leave to amend. (ECF No. 39 at 23.)

**B. NHPA Claim – Post-Review Discovery Process**

Federal Defendants next argue the Court lacks subject matter jurisdiction over Plaintiffs' NHPA claim based on the post-review discovery process regarding the massacre site because it is unripe, as Federal Defendants have not yet completed the process—so there is no final agency action for the Court to review. (ECF No. 36 at 15-16.) Plaintiffs counter this claim is ripe as a failure to act, meaning that BLM must have completed (but did not) the post-review discovery process before approving Lithium

1   Nevada's reclamation bond that allowed Lithium Nevada to start construction on the

2   Project, and/or BLM's approval of new construction under Lithium Nevada's prior permits

3   covering the same area. (ECF No. 39 at 6-11.)

4        While the Court finds Plaintiffs' argument in response to the Motion plausible, that

5   argument is not clearly reflected in the pertinent allegations in the Complaint. The Court

6   will therefore grant the Motion as to this claim, but grant Plaintiffs leave to amend it. *See,*

7   *e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first

8   time in plaintiff's opposition papers should be considered by the court in determining

9   whether to grant leave to amend or to dismiss the complaint with or without prejudice.").

10       Indeed, as the Court explained in the PI Order, Plaintiffs phrase their claim as

11  challenging an ongoing post-review discovery process in their Complaint. (ECF No. 32 at

12  14 (citing ECF No. 1 at 2, 3, 36).) Plaintiffs have not amended or moved to amend their

13  Complaint since the Court issued the PI Order, so the Court's analysis from that order

14  continues to apply to this claim. Said otherwise, this claim still appears unripe.

15       However, Plaintiffs argue in their opposition to the Motion that "the discovery of

16  unidentified historic properties triggered new Section 106 review that was required to be

17  completed prior to the approval of the reclamation bond for the Thacker Pass project and

18  prior to the approval of work plan modifications for the older permits." (ECF No. 39 at 9.)

19  Said otherwise, Plaintiffs argue that BLM's failure to act was failing to complete a

20  consultation process before approving the reclamation bond for the Project and otherwise

21  authorizing work plan authorizations under older permits. And it is possible to challenge a

22  failure to act under the APA if the agency was required to take a particular action that it

23  did not. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004).[4] But

24  _____

25       [4]Plaintiffs rely on this case to support their argument in response to the Motion.
    (ECF No. 39 at 6.) The Court accordingly notes that *Norton* does not support their
26  argument. In *Norton*, the Court rejected the plaintiffs' APA failure to act claim, finding that
    the statute the plaintiffs relied upon did not require BLM to take the sort of action that the
    plaintiffs wanted it to take, and indeed sued to attempt to force the BLM to take. *See* 542
27  U.S. at 65-67. Plaintiffs also rely on *Battle Mountain Band v. United States Bureau of Land
    Mgmt.*, Case No. 3:16-cv-0268-LRH-WGC, 2016 WL 4497756, at *8 & n.16 (D. Nev. Aug.
28  26, 2016). (ECF No. 39 at 7.) But that case does not support their argument, either,

1    Plaintiffs' Complaint only refers to failures to act in general terms—it does not articulate

2    this argument Plaintiffs now raise, much less include plausible factual allegations

3    supporting it. (ECF No. 1 at 2 (challenging "actions and failures to act"), 3 (alleging that

4    BLM failed to avoid adverse impacts to historic properties, which is not quite the same

5    thing as alleging that BLM failed to complete a required consultation process), 36 (same).)

6         Plaintiffs' argument in response to the Motion as to this claim accordingly goes

7    more to whether the Court should grant them leave to amend it (without explicitly asking

8    for leave to amend) instead of whether the Court should deny the Motion. As Plaintiffs'

9    responsive argument is not adequately reflected in their Complaint, and the brief ripeness

10   analysis the Court included in the PI Order remains applicable to this claim as currently

11   alleged, the Court grants the Motion. But the Court grants Plaintiffs leave to amend this

12   claim, as it cannot say that amendment would be futile.

13            **C.  NHPA Claim – Pre-ROD Consultation with SLPT**

14        Federal Defendants then argue that SLPT has not plausibly alleged Federal

15   Defendants failed to adequately consult with it before issuing the ROD, particularly given

16   the judicially noticeable facts of BLM's consultation history with SLPT. (ECF No. 36 at 16-

17   21.) SLPT responds by raising the possibility that it did not receive the letters BLM sent it

18   regarding the Project, discussing how the Nevada SHPO stated BLM withheld information

19   from it, and arguing that BLM misrepresented that it had been meeting with SLPT about

20   the Project in correspondence with the Nevada SHPO—the latter two points apparently

21   intended to show how BLM's consultation with SLPT was inadequate. (ECF No. 39 at 20-

22   21.) The Court again agrees with Federal Defendants. However, as SLPT's response to

23   _____

24   because there, Judge Hicks found that "BLM was not required under the PA or the NHPA
     to conduct any new Section 106 adverse impact analysis on the underlying power line."

25   *Battle Mountain Band*, 2016 WL 4497756, at *8. Judge Hicks also agreed with BLM's
     determination that previously identified traditional cultural properties were not "newly

26   discovered," whereas here BLM has agreed to treat the massacre site as a newly
     discovered traditional cultural property triggering a post-review consultation process. *See*

27   *id.* (*See also* ECF No. 36 at 15-16.) Thus, while both of these cases provide frameworks
     within which Plaintiffs argue their claims viably reside, neither of them support Plaintiffs'

28   arguments from the perspective of the outcome the two courts reached.

1  the Motion relies on an argument not reflected in the Complaint that could make a

2  difference in terms of the ultimate viability of their claim, the Court will grant SLPT leave

3  to amend this claim.

4      The Court first reiterates that it found SLPT unlikely to prevail on this claim in the

5  PI Order, in large part because the Court considered the evidence that BLM again asks

6  the Court to take judicial notice of. (ECF No. 32 at 8-11; *see also* ECF No. 36 at 16-21.)

7  While SLPT does not dispute any of that evidence in response to the Motion, the Court

8  sets aside for purposes of the Motion whether SLPT will ultimately prevail on this claim

9  because the proper inquiry focuses on the allegations in the Complaint. *See, e.g.*, *Ashcroft*

10  *v. Iqbal*, 556 U.S. 662, 677-80 (2009). But still pertinent here, the Court also discussed in

11  the PI Order how Plaintiffs' Complaint does not address the consultation letters that BLM

12  contends it sent to SLPT regarding the Project. (ECF No. 32 at 8.)

13      Now, in response to the Motion, SLPT suggests that it may not have received any

14  of the letters BLM contends it sent to SLPT before BLM issued the ROD. (ECF No. 39 at

15  20-21.) But there is no corresponding allegation in the Complaint. (ECF No. 1 at 16-19

16  (stating that "BLM did not discuss the Project with SLPT before issuing the ROD" and

17  "BLM did not meet with any Tribes to discuss the project during the Thacker Pass NEPA

18  process[,]" but not addressing any letters that BLM sent before issuing the ROD), 36

19  (alleging a "failure to consult with the Tribe").)[5] Discussion is generally understood to mean

20  something different than correspondence by mail. And an alleged failure to consult does

21  not necessarily speak to whether SLPT received any letters that BLM contends it mailed

22  either. It seems most plausible from the Complaint that SLPT is alleging BLM violated

23  NHPA by not holding any in person meetings with them about the Project before issuing

24  the ROD. Regardless, the Complaint simply does not address any letters that BLM may

25  have sent SLPT before issuing the ROD in January 2021. (*Id.*)

26  —————————

27  [5]The Complaint also incorporates by reference a May 2021 letter from Summit Lake
   Paiute Council Chairwoman Randi Lone Eagle to BLM (ECF No. 1 at 16 (quoting ECF No.
   3 at 9-10)), but that letter does not speak to whether SLPT received any letters from BLM

28  before BLM issued the ROD either (ECF No. 3 at 9-10).

"The NHPA implementing regulations require agencies to provide a tribe with 'a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects.'" *Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 608 F.3d 592, 608 (9th Cir. 2010) (quoting 36 C.F.R. § 800.2(c)(2)(ii)(A)). Thus, whether SLPT received any letters from BLM before BLM issued the ROD is important to consider in determining whether BLM gave SLPT "a reasonable opportunity to identify its concerns about historic properties" pertinent to the Project. And it accordingly seems fair to give SLPT an opportunity to amend their Complaint to add allegations—currently lacking from it—consistent with their pertinent argument responsive to the Motion as to this claim.

In sum, the Court grants the Motion as to this claim, but grants SLPT leave to amend.

**D. NEPA**

Federal Defendants go on to argue that the Court must dismiss Plaintiffs' NEPA claim because, considering that BLM issued the pertinent final environmental impact statement several years ago at this point, Plaintiffs have not alleged that a major federal action remains, or that significant new circumstances or information warrant supplementation of the environmental impact statement it had prepared before approving the Project. (ECF No. 36 at 21-23.) Plaintiffs counter that they have alleged significant new circumstances in their Complaint, specifically some June 2021 letters notifying BLM that they consider the entire Thacker Pass area their traditional cultural property, and the 1865 massacre site that RSIC and BPT notified BLM about in September 2021. (ECF No. 39 at 21-23.) Plaintiffs further argue that several major federal actions pertinent to the Project had not yet occurred in September 2021, specifically, BLM had not yet issued the Archaeological Resource Protection Act ("ARPA") permit, nor had BLM adjudicated the reclamation bond. (*Id.* at 23.)

1   The latter portion of Plaintiffs' argument is foreclosed by *Ctr. for Biological Diversity*
2   *v. Salazar*, 706 F.3d 1085, 1095-96 (9th Cir. 2013), which Plaintiffs do not address in their
3   response (ECF No. 39 at 21-23) even though Federal Defendants expressly reply upon it
4   in their Motion (ECF No. 36 at 22).[6] In *Salazar*, the Ninth Circuit found that "BLM's issuance
5   of a gravel permit to Mohave County, [the] requirement that Denison obtain a new air
6   quality control permit, and approval of an updated reclamation bond" were not major
7   federal actions triggering NEPA supplementation requirements. 706 F.3d at 1095. The
8   'major federal actions' Plaintiffs point to here—the ARPA permit and the reclamation bond
9   (ECF No. 39 at 21-23)—are indistinguishable from the actions the *Salazar* court found not
10  to constitute major federal actions. The Court accordingly grants Federal Defendants'
11  Motion as to Plaintiffs' NEPA claim.

12      **E.  FLPMA**

13      Federal Defendants finally argue that Plaintiffs fail to plausibly allege they violated
14  FLPMA because no applicable regulations support Plaintiffs' contention that issuance of
15  the ROD immediately terminated all prior permits Lithium Nevada had been granted in the
16  Project area—and neither does the plan of operations that Plaintiffs' claim relies upon.
17  (ECF No. 36 at 23-26.) Plaintiffs counter they have plausibly alleged that Federal
18  Defendants violated FLPMA because BLM authorized unnecessary and undue
19  degradation of the land in the Project area by approving operations under older permits
20  that violate the Thacker Pass Mine Plan of Operations ("Plan"). (ECF No. 39 at 11-13.)
21  The Court again agrees with Federal Defendants because Plaintiffs have not plausibly
22  alleged that BLM's actions violated the Plan.

23      The regulations that Plaintiffs' argument relies on require compliance with an
24  approved plan of operations. (*Id.* at 12-13 (citing 43 C.F.R. § 3809.5, 43 C.F.R. § 3809.41,
25  and 43 C.F.R. § 3809.415).) And as the Court explained in the PI Order (ECF No. 32 at
26  12-14), Plaintiffs' FLPMA claim is based on a sentence (or sentences, as they refer to a

27

28      [6]And as the Court finds this latter portion determinative, the Court need not—and
        does not—address the 'significant new information' portion of the parties' arguments.

similar sentence used in two different places) from the Plan stating that approval of the plan will terminate prior authorizations and all reclamation requirements (ECF No. 1 at 10). But as they did in their motion for preliminary injunction, Plaintiffs read out the "and all reclamation requirements" clause to argue that BLM authorized activity that violated the Plan by not immediately terminating Lithium Nevada's prior permits when BLM issued the ROD. (ECF Nos. 32 at 12-14 (describing and rejecting the argument), 39 at 11-13 (declining to discuss or address the import of the "and all reclamation requirements" clause).) As the Court found in the PI Order, this is not a plausible reading of the portion of the Plan upon which Plaintiffs' FLPMA claim is based. (ECF No. 32 at 12-14.) The clause "and all reclamation requirements" must mean something. Indeed, Federal Defendants' proposed construction of the pertinent portion of the plan seems more plausible. (ECF No. 43 at 12-13.)

Because of this implausibility, Plaintiffs have not, in turn, plausibly alleged that BLM approved any actions that did not comply with the Plan. And without any violation of the Plan, Plaintiffs' FLPMA claim is implausible and must therefore be dismissed. (ECF No. 39 at 12-13 (relying on regulations requiring compliance with a plan of operations).) *See also Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.") (citation omitted). The Court also grants Federal Defendants' Motion as to Plaintiffs' FLPMA claim.

However, the Court will grant Plaintiffs leave to amend as to this claim, as the Court cannot say that amendment would be futile. Plaintiffs could conceivably add more factual allegations to this claim consistent with their core contention that BLM's authorization of additional work under Lithium Nevada's old permits covering work within the Project area violated the Plan—such as, perhaps, more context from other parts of the Plan and allegations that actually address the "and all reclamation requirements" clause that Federal Defendants have persuasively pointed to twice now. Indeed, given that the Court has now twice agreed with Federal Defendants as to this claim and Plaintiffs did not vary their argument at all the second time (in response to the Motion), or address "and all

reclamation requirements[,]" the Court is skeptical that Plaintiffs could successfully amend it. But skeptical does not mean futile. So the Court grants Plaintiffs leave to amend this claim as well.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Federal Defendants' motion to dismiss (ECF No. 36) is granted as specified herein.

It is further ordered that Plaintiffs may file an amended complaint including any claims that the Court granted leave to amend herein, within 30 days.

It is further ordered that, if Plaintiffs do not file an amended complaint consistent with this order within 30 days, the Court may dismiss this case in its entirety, with prejudice, and without further advance notice to Plaintiffs.

DATED THIS 9th Day of November 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE